[No. D056589. Fourth Dist., Div. One. Apr. 5, 2011.]

In re TOBACCO CASES I.

## COUNSEL

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dennis Eckart, Assistant Attorney General, and Jeanne Finberg, Deputy Attorney General, for Plaintiff and Appellant The People.

Wright & L'Estrange, Robert C. Wright, Joseph T. Ergastolo, Alexander T. Gruft; Jones Day and Noel J. Francisco for Defendant and Appellant R.J. Reynolds Tobacco Company.

## OPINION

**McCONNELL, P. J.**—In *In re Tobacco Cases I* (2010) 186 Cal.App.4th 42 [111 Cal.Rptr.3d 313], this court affirmed an order in which the trial court granted the People of the State of California relief on their action against R.J. Reynolds Tobacco Company (Reynolds) to enforce a consent decree and final judgment (Consent Decree) entered on a master settlement agreement (MSA). We agreed that certain images Reynolds used in an advertising campaign for Camel cigarettes violated the cartoon ban in the MSA, which was incorporated into the Consent Decree.

■ In this companion appeal, Reynolds challenges an order awarding attorney fees to the People. Reynolds contends (1) the court erred by finding Civil Code section 1717 (section 1717), which governs attorney fees in contract actions, inapplicable to the unilateral attorney fees clause in favor of the state in the Consent Decree; and (2) the court applied the wrong legal standard in its alternative finding that even if section 1717 applies, the People prevailed for purposes of attorney fees because they won on a "significant issue" in the litigation. Under section 1717, the prevailing party is the party who recovers "greater relief" in the litigation. (§ 1717, subd. (b)(1).) Reynolds asserts that under the correct standard, it prevailed or neither party prevailed, given the People's limited success. We agree that section 1717 applies to the Consent Decree and the court used an incorrect legal standard in determining the prevailing party. We reverse the order awarding fees, and remand the matter to the court for its reconsideration under the correct standard.

The People also appeal the order, contending the court erred by denying them prevailing market rates on the ground the attorney fees provision in the Consent Decree provides for an award of fees "incurred" by the state, rather than for an award of reasonable fees. For the court's convenience on remand, we address this issue. The court's ruling was based on its erroneous finding that section 1717 is inapplicable. When section 1717 applies, the prevailing party is entitled to "reasonable" fees (§ 1717, subd. (a)), meaning the rates prevailing in the community for similar work.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 1998 Reynolds and several other tobacco manufacturers entered into the MSA with most states, including California, to resolve government claims pertaining to public health concerns about smoking and the marketing of tobacco products to minors. In December 1998 the People and Reynolds signed the Consent Decree, under which the San Diego County Superior Court approved the MSA and retained exclusive jurisdiction over its implementation and enforcement.

The Consent Decree permanently enjoins participating tobacco manufacturers from "using or causing to be used" any "cartoon" in the advertising, promoting, labeling or packaging of tobacco products. The Consent Decree incorporates the MSA's definition of "cartoon," which is "any drawing or other depiction of an object, person, animal, creature or any similar caricature that satisfies any of the following criteria: [¶] (1) the use of comically exaggerated features; [¶] (2) the attribution of human characteristics to animals, plants or other objects, or the similar use of anthropomorphic technique; or [¶] (3) the attribution of unnatural or extrahuman abilities, such as imperviousness to pain or injury, X-ray vision, tunneling at very high speeds or transformation."

In 2006 Reynolds launched an advertising campaign called "Camel Farm" or "Farm Rocks" to promote the sale of Camel cigarettes to adult smokers who enjoy rock music performed by artists on independent labels. Reynolds used the campaign in various media, including special advertisements in publications, a promotional compact disc and a Web site. As part of the campaign, Reynolds placed a four-page "gatefold" advertisement in the November 2007 Rolling Stone magazine, which was its 40th anniversary edition. The gatefold advertisement consisted of photographic collages, or photomontages, of various fanciful objects. It was placed adjacent to five pages of the magazine's editorial content, which indisputably included cartoons under any definition of the term.

In December 2007 the People moved for an order to enforce the MSA and the Consent Decree. In February 2008 the People filed an amended motion to enforce only the Consent Decree, which embodies the MSA. The People sought an order declaring Reynolds violated the cartoon ban "thousands of times in 2006 and 2007 as part of its Farm Rocks campaign advertisements of Camel cigarettes," and sanctions based on the number of violations. The People's theory was that Reynolds violated the cartoon ban in two ways: by including cartoons in its own advertising, and by having its gatefold advertisement in Rolling Stone magazine adjacent to the magazine's editorial pages, which contained cartoons.

The court issued a declaration that "a relatively small portion" of the images in the Camel Farm or Farm Rocks campaign violated the cartoon prohibition. The objectionable images included "jet-powered tractors which fly," "radios flying by means of attached helicopter rotors," "televisions that grow on plant stems," and tractors "with wheels made of film reels able to defy gravity." The court rejected the People's theory that Reynolds was responsible for the placement of its advertisement in Rolling Stone magazine near cartoons the magazine provided.

The court declined to issue further declaratory relief, or any injunctive relief, because the MSA and the Consent Decree already prohibited the use of cartoons in advertising, and Reynolds had terminated the Camel Farm campaign and taken steps to avoid the future adjacency of its advertising to cartoons provided by others. The court determined it had jurisdiction under the Consent Decree to assess sanctions against Reynolds, but it declined to do so because its violation of the cartoon ban was unintentional and "a relatively small part of the advertisements," the People stipulated there was no proof of

the amount of actual damage on which to base a sanctions award, and it would be difficult to quantify the number of persons exposed to the Camel Farm campaign.

We affirmed the court's order. (*In re Tobacco Cases I, supra*, 186 Cal.App.4th at p. 44.) We declined to address Reynolds's contention the trial court erred by finding it had jurisdiction to award civil sanctions under the Consent Decree since the matter was moot. (*Id.* at pp. 52–54.)

In the meantime, the People pursued attorney fees from Reynolds under the following unilateral provision in the Consent Decree: "In any proceeding which results in a finding that a Participating Manufacturer violated this Consent Decree and Final Judgment, the Participating Manufacturer or Participating Manufacturers found to be in violation shall pay the State's costs and attorneys' fees incurred by the State of California in such a proceeding."

The court designated the People as the prevailing parties entitled to attorney fees. The court rejected Reynolds's argument the action was "on a contract" for purposes of section 1717. (§ 1717, subd. (a).) Alternatively, the court found that even if section 1717 applies, the People were the prevailing parties entitled to fees because they prevailed on the "significant issue" of whether Reynolds violated the cartoon ban in its own advertising. The court rejected the People's argument they are entitled to attorney fees at prevailing market rates, on the ground the Consent Decree's attorney fees clause "does not provide for reasonable attorney fees but instead requires the payment of attorney fees 'incurred.' " The court denied Reynolds's request to apportion fees based on the People's limited success, on the ground they voluntarily reduced the number of attorney hours spent by 15 percent. On November 5, 2009, the court issued an order granting the People $707,882.50 in attorney fees and other costs of $32,673.

## DISCUSSION

### I

*Prevailing Party Determination*

#### A

*Section 1717 Applies to the Consent Decree*

Reynolds contends the court erred by finding the People's action for enforcement of the Consent Decree is not an action "on a contract" for purposes of section 1717. (§ 1717, subd. (a).) We agree.

■ The interpretation of a statute presents a legal question we review independently. (*Travis v. Board of Trustees of California State University* (2008) 161 Cal.App.4th 335, 340 [73 Cal.Rptr.3d 854].) "In construing a statute, a court's objective is to ascertain and effectuate legislative intent. [Citation.] To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

■ Section 1717 "was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) Subdivision (a) of section 1717 provides in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." ■ Under section 1717, subdivision (b)(1), the prevailing party in a contract action is the party who obtains "greater relief" on the contract, and in instances of mixed results the court has discretion to find no party prevailed. (*Hsu v. Abbara, supra*, 9 Cal.4th at p. 876.)

Reynolds cites *Share v. Casiano Bel-Air Homeowners Assn.* (1989) 215 Cal.App.3d 515 [263 Cal.Rptr. 753] (*Share*), in which the issue was whether an attorney fees clause in a residential development's covenants, conditions and restrictions (CC&R's) was applicable in a civil contempt action by homeowners against the homeowners association for its violation of a consent judgment in which the association agreed to abide by its duty under the CC&R's to maintain a hillside. The court rejected the association's argument the action was not "on a contract" for purposes of section 1717. (*Share*, at p. 523.) The court explained the "contention lacks merit because as the home-owners argue, they brought the contempt proceeding to obtain the Association's compliance with its contractual obligations pursuant to the CC&R's *as embodied in the judgment*, they were successful in their efforts, and the CC&R's provide for attorney's fees to the prevailing party." (*Ibid.*, italics added.)[1]

---

[1] Reynolds also cites *Big Bear Mun. Water Dist. v. Bear Valley Mutual Water Co.* (1989) 207 Cal.App.3d 363 [254 Cal.Rptr. 757] (*Big Bear*), but it is unhelpful to our analysis. In *Big Bear*, the court assumed a judgment was a contract subject to section 1717, based on an unchallenged ruling by the trial court that "because the judgment was the result of a stipulated agreement, that it was equivalent to a contract." (*Big Bear*, at p. 385, fn. 10.) " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo*

The People attempt to distinguish *Share* on the ground that here, the attorney fees clause appears in the Consent Decree rather than the underlying contract between the parties, the MSA. The holding in *Share*, however, was that section 1717 applied to an action on a consent judgment, a holding which is contrary to the People's position that an action on a consent decree cannot be considered an action "on a contract" for purposes of section 1717, because a consent decree is a judgment rather than a contract. Whether the attorney fees clause was in the consent judgment or the underlying CC&R's does not appear material. Surely, had the attorney fees clause in *Share* appeared in the consent judgment rather than the CC&R's, the court would likewise have held section 1717 applied. In *Share*, a release and indemnity agreement incorporated into the consent judgment did include an attorney fees clause, but the parties differed on its meaning and the court declined to resolve the dispute since the broader clause in the CC&R's clearly allowed fees. (*Share, supra*, 215 Cal.App.3d at pp. 521–522.)

■ In any event, even without considering *Share*, we conclude the attorney fees provision in the Consent Decree is subject to section 1717. "In a stipulated judgment, or consent decree, litigants *voluntarily* terminate a lawsuit by *assenting to specified terms*, which the court agrees to enforce as a judgment." (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 663 [268 Cal.Rptr. 284, 788 P.2d 1156], italics added.) Consent decrees "bear some of the earmarks of judgments entered after litigation," but "because their terms are arrived at through mutual agreement of the parties, consent decrees also *closely resemble contracts*." (*Firefighters v. Cleveland* (1986) 478 U.S. 501, 519 [92 L.Ed.2d 405, 106 S.Ct. 3063], italics added; *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 184 [82 Cal.Rptr.3d 586] [consent judgment "is regarded as a contract between the parties"].) "[C]onsent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes." (*Firefighters v. Cleveland, supra*, at p. 519; see *Johnson Products Co. v. F.T.C.* (1977) 549 F.2d 35, 37–38 ["whether a consent decree will be treated as a contract will depend upon the particular context in which the issue arises"].)[2]

---

(1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].) We deny Reynolds's September 9, 2010 request that we take judicial notice of superior court records in the *Big Bear* case. Reynolds's reliance on *State of Washington v. John* (1993) 69 Wn.App. 615 [849 P.2d 1268], is also unavailing because there the state conceded that a unilateral attorney fees clause in favor of the state in a consent decree applied equally to the opposing party under a statute similar to section 1717. (*State of Washington v. John, supra*, 849 P.2d at p. 1271.)

[2] For example, courts have rejected the argument that consent decrees are contracts for purposes of determining whether they are modifiable without the parties' agreement (*Johnson Products Co. v. F.T.C., supra*, 549 F.2d at p. 38; *Mendly v. County of Los Angeles* (1994) 23

■ In enforcement actions, consent decrees are treated as contracts for purposes of interpretation. (*Pardee Construction Co. v. City of Camarillo* (1984) 37 Cal.3d 465, 471 [208 Cal.Rptr. 228, 690 P.2d 701].) Under ordinary rules of contract interpretation, the unilateral attorney fees clause in the Consent Decree is subject to section 1717. Further, the merits of the action pertained to contract interpretation. In the previous appeal, we were required to interpret the term "cartoon," a term the parties voluntarily agreed to in the MSA, a contract incorporated into the Consent Decree, and the Consent Decree is also in the nature of a contract. (*In re Tobacco Cases I, supra*, 186 Cal.App.4th at p. 47.) Since the parties agreed to the definition of "cartoon," this action logically involves an agreement subject to section 1717.

■ The term "on a contract" in section 1717 "does not mean only traditional breach of contract causes of action. Rather, 'California courts "liberally construe 'on a contract' to extend to any action '[a]s long as an action "involves" a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit . . . .' " ' " (*Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486 [70 Cal.Rptr.3d 9].) "Actions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of . . . section 1717." (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246 [34 Cal.Rptr.2d 155].)

To decide the issue in the People's favor, we would have to interpret the term "on a contract" in section 1717 narrowly, which is impermissible under California law and antithetical to the Legislature's intent of ensuring reciprocity of remedy. At the trial court, the People even conceded, "At issue here is the enforcement of a civil contract to settle litigation."

. ■ The People cite no apposite authority to support their position. They contend this action is not "on a contract" for purposes of section 1717 because the trial court determined that rules pertaining to the enforcement of a judgment applied rather than the rules pertaining to an action for breach of contract. The People point out that the court ruled they could proceed by motion rather than having to file a complaint, and that no jury was required. The court's ruling states: "Although [Reynolds] provided some authority stating that consent decrees can be characterized as contracts . . . , the Court notes that it denied [Reynolds's] request for a jury trial based upon its finding that this action was equitable in nature." Again, however, since section 1717 broadly applies to any dispute involving a written agreement, it applies to an

Cal.App.4th 1193, 1206–1207 [28 Cal.Rptr.2d 822]), or of "determining whether a third party beneficiary action could be maintained for breach of that contract." (*Johnson Products Co. v. F.T.C.*, at p. 38.)

enforcement action such as this one. Further, the type of relief sought begs the question of whether section 1717 applies. "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 [85 Cal.Rptr.3d 532].) If an action is "on a contract," section 1717 applies even when only equitable relief is sought.

■ Additionally, the People contend legislative intent would not be served by applying section 1717 to this particular action because Reynolds is a sophisticated company represented by able attorneys, and the parties had equal bargaining power when they entered into the unilateral attorney fees provision in the Consent Decree. The People assert "Reynolds is not a disadvantaged party needing protection." Whether section 1717 applies is a legal question, however, rather than a factual question dependent on the contracting parties' individual circumstances. The "primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 [71 Cal.Rptr.2d 830, 951 P.2d 399].) "To achieve its goal, the statute generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu v. Abbara, supra,* 9 Cal.4th at pp. 870–871.)

■ The People also claim that the application of section 1717 to a consent decree "would upend the practice and principles applied in civil rights litigation, securities litigation, and environmental practice, just to name a few areas." They do not, however, offer any supporting legal citation. "[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived." (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].)

B

*"Greater Relief" Criterion*

■ Reynolds also persuasively contends the court applied an incorrect legal standard in determining that if section 1717 applies, the People were nonetheless the prevailing parties. The court found the People prevailed because they won on a "significant issue," whether Reynolds violated the Consent Decree by using banned cartoons in its own advertising. The court's order cites *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140,

153 [50 Cal.Rptr.3d 273] which states: "It is settled that ' "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit." ' " *Graciano*, however, pertains to fees under a statute other than section 1717. (*Graciano*, at p. 145.) "The definition of prevailing party is not uniform under California law, and many attorney fees statutes contain a technical definition applicable to the particular statutory scheme." (*Donner Management Co. v. Schaffer* (2006) 142 Cal.App.4th 1296, 1309 [48 Cal.Rptr.3d 534].)

■ Under section 1717, subdivision (b)(1), "the party prevailing on the contract shall be the party who recovered a *greater relief* in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." (Italics added.) Section 1717 allows "those parties whose litigation success is not fairly disputable to claim attorney fees as a matter of right, while reserving for the trial court a measure of discretion to find no prevailing party when the results of the litigation are mixed." (*Hsu v. Abbara, supra,* 9 Cal.4th at p. 876.) " '[T]ypically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' " (*Id.* at p. 875.)

■ The results here were mixed. In *Hsu v. Abbara, supra,* 9 Cal.4th at page 876, the California Supreme Court held "that in deciding whether there is a 'prevailing party on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " Additionally, "in determining litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." (*Id.* at p. 877, italics omitted.)

Reynolds claims the People did not recover greater relief because their main litigation objective was a declaration Reynolds violated the Consent Decree's ban on cartoons through the placement of its Farm Rocks or Camel Farm advertisement in Rolling Stone magazine adjacent to the magazine's editorial pages, and their successful claim that Reynolds's own advertisement

violated the ban was merely a "back-up" claim. The People argue the opposite. We reverse the order on fees, and because an award is a discretionary matter for the trial court's determination in the first instance, we remand the matter for the court's reconsideration under the correct legal standard.[3]

II

*Prevailing Market Rates*

 The court denied the People's request for fees at prevailing market rates, rather than the substantially lower salaried rates of in-house counsel, on the ground the Consent Decree limits fees to those "incurred" by the state. The People contend this was error, and the Consent Decree should be interpreted to authorize an award of "reasonable fees" even though it does not expressly use that term. We are not required to reach the issue, however, because the court's ruling was based on the supposed inapplicability of section 1717. Should the court on remand determine the People are the prevailing parties under the "greater relief" standard, it is established that section 1717 authorizes an award to them of prevailing market rates.

 "We review a determination of the legal basis for an award of attorney fees de novo as a question of law." (*Pueblo Radiology Medical Group, Inc. v. Gerlach* (2008) 163 Cal.App.4th 826, 828 [77 Cal.Rptr.3d 880].) Section 1717, subdivision (a) provides that when a contract authorizes an award of attorney fees and costs "which are incurred to enforce that contract," the prevailing party is entitled to "reasonable" fees.

 In *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094 [95 Cal.Rptr.2d 198, 997 P.2d 511], the California Supreme Court affirmed the trial court's award of prevailing market rates under section 1717 to a corporation represented by salaried in-house counsel. The court explained "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, Inc. v. Drexler*, at p. 1095.) The court rejected the opposing party's argument the trial court erred by not using "a so-called cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of

---

[3] Given the reversal and remand, Reynolds's contention that even if the People are entitled to fees the award was excessive is moot.

in-house counsel," explaining that "[n]othing in . . . section 1717 compels such an approach." (*Id.* at pp. 1096–1097.) ■ The court added: "Requiring trial courts in all instances to determine reasonable attorney fees based on actual costs and overhead rather than an objective standard of reasonableness, i.e., the prevailing market value of comparable legal services, is neither appropriate nor practical; it 'would be an unwarranted burden and bad public policy.' " (*Id.* at p. 1098.) ■ The court also rejected the "argument that awarding fees to in-house counsel based on prevailing market rates for attorney services, as a general matter, 'most likely constitutes an unjustified windfall.' " (*Id.* at p. 1097.)

■ In *Lolley v. Campbell* (2002) 28 Cal.4th 367, 374 [121 Cal.Rptr.2d 571, 48 P.3d 1128], the court emphasized that in *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, it "specifically rejected the contention . . . that attorney fees 'incurred' means *only* fees a litigant actually pays or becomes liable to pay from his own assets." The court added, "Our appellate courts have repeatedly affirmed awards of attorney fees under various fee-shifting provisions for legal services provided at no personal expense to the client." (*Lolley v. Campbell,* at p. 374.)

Reynolds asserts that even if section 1717 governs fees, the People cannot obtain fees greater than those actually incurred. Reynolds cites *Reynolds Metals Co. v. Alperson, supra,* 25 Cal.3d 124, 130, in which a provision in promissory notes limited attorney fees to 15 percent of the amount of the notes, and the court held "recovery of fees under section 1717 must be similarly limited" because "the statutory right should be no greater than the contractual right." The attorney fees clause in the Consent Decree, however, does not place a monetary cap on fees. Rather, it provides for an award of fees "incurred" by the state, which simply brings the provision within the ambit of section 1717. Reynolds's theory is contrary to the express language of section 1717, subdivision (a), which provides for "reasonable" fees when a contractual provision authorizes an award of attorney fees "incurred" by one party or the prevailing party. Reynolds seeks the benefit of section 1717's "greater relief" standard for the determination of the prevailing party (§ 1717, subd. (b)(1)), but it seeks to avoid liability for reasonable fees should the court determine the People recovered the greater relief. Section 1717, however, applies in its entirety.[4]

---

[4] We deny the People's July 27, 2010 request that we take judicial notice of Department of Justice administrative bulletins listing government attorney and paralegal billing rates.

## DISPOSITION

The November 5, 2009 order awarding attorney fees is reversed. We direct the court on remand to reconsider the attorney fees issue in accordance with this opinion. The parties are to bear their own costs on appeal.

Huffman, J., and McIntyre, J., concurred.