Filed 10/14/14  Davis v. City of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DAVID R. DAVIS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B241631 <br><br> (Los Angeles County <br> Super. Ct. No. BS131915) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Michel & Associates, C. D. Michel, Joshua R. Dale and Tamara M. Rider for Plaintiffs and Appellants.

John C. Eastman and Anthony T. Caso for Center for Constitutional Jurisprudence as Amicus Curiae on behalf of Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs David R. Davis, Jacob Daniel Hill, Brian Goldstein, Paul Cohen, Jill Brown, Chris Butler, Scott Austin, Eric Feder, and Lisa Siegel appeal from a judgment denying their petition for writ of mandate. By their petition, plaintiffs sought to compel defendants City of Los Angeles, Los Angeles Police Department (LAPD), and Police Chief Charlie Beck (collectively the City) to issue them permits to carry concealed weapons (CCW). The trial court concluded that mandate was not the proper remedy in this case and denied the petition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Assenza Judgment and the LAPD Concealed Weapons Permit Policy*

In 1994 the Los Angeles Superior Court entered a stipulated judgment in an action entitled *Assenza v. City of Los Angeles* (Super. Ct. L.A. County, 1994, No. BC115813) brought by a group of plaintiffs against the City, LAPD, then-Police Chief Willie L. Williams, and others. The plaintiffs were citizens and taxpayers who had unsuccessfully sought CCW permits from the City. They "challeng[ed] LAPD's procedure, rules and practices for issuing licenses to carry concealed firearms pursuant to" Penal Code former section 12050 et seq.[1]

The judgment stated that the City "admit[ted] that certain rules, policies, practices and procedures, and certain features of the Board Policy Statement . . . were not in

---

[1]     Penal Code former section 12050 provided in pertinent part: "[T]he chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person . . . ." (*Id*., subd. (a)(1).) The Legislature has since repealed section 12050 and replaced it with Penal Code section 26150 et seq., operative January 1, 2012. (Stats. 2010, ch. 711, § 4.)

compliance with [Penal Code former s]ection 12050 [et seq]. Those former rules, policies, practices and procedures have been altered. The Policy Statement itself has been repealed and will be replaced by the provisions of items E and F of this judgment, provided that the Los Angeles defendants reserve the right to add further specifications to their rules, regulations and guidelines, so long as such amendments are not inconsistent with the provisions of this judgment."

Item D of the *Assenza* judgment provided: "The allegations of the complaint showed good cause as to all of the plaintiffs who sought to be issued [CCW] licenses. . . . These named plaintiffs will receive licenses, and their licenses will be renewed for a one year term, but only so long as they continue to have good cause, good character, not to be barred by law from the ownership of concealable firearms, and to meet each of the other requirements of licensure under [Penal Code former s]ection 12050 [et seq]."

Item E provided: "The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily [injury] to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

Item F provided "further rules and guidelines . . . for the interpretation and implementation of Item E[.]" Specifically, paragraph 2 of Item F stated: "Good cause shall be deemed to exist, and a license will issue in the absence of strong countervailing factors, upon a showing of any of the following circumstances: a) The applicant is able to establish that there is an immediate or continuing threat, express or implied, to the applicant's, or the applicant's family's, safety and that no other reasonable means exist which would suffice to neutralize that threat. b) The applicant is employed in the field of security, has all requisite licenses, is employed by a security firm having all requisite licenses, and provides satisfactory proof that his or her work is of such a nature that it requires the carrying of a concealed weapon. c) The applicant has obtained, or is a person included within the protections of, a court order which establishes that the

applicant is the on-going victim of a threat or physical violence or otherwise meets the criteria set forth in [Penal Code s]ection 12025.5.  d) The applicant establishes that circumstances exist requiring amounts of valuable property which it is impractical or impracticable to entrust to the protection of armored car services or equivalent services for safe transportation of valuables.  e) The applicant establishes that he or she is subject to a particular and unusual danger of physical attack and that no reasonable means are available to abate that threat."  Paragraph 5 of Item F further provided that "[a]bsent good cause for denial, persons having good cause as defined in paragraph 2 shall be issued licenses for the maximum time period allowed by [Penal Code former] section 12050, and their licenses shall be renewed so long as they continue to have good cause. . . ."  Paragraph 6 of Item F provided that "[a]ll applicants shall receive a copy of these guidelines along with the application form."

Finally, the judgment provided that "[t]he court will retain continued jurisdiction of the action in order to make any further orders which may be necessary.'"  The LAPD then adopted a Concealed Weapon License Policy that included the language of Item E and Item F, paragraph 2, of the *Assenza* judgment.

In 1998 the parties amended the judgment to substitute Bernard Parks for Willie L. Williams, and in 2003 amended the judgment to substitute William J. Bratton for Bernard Parks.  The operative third amended judgment entered on June 11, 2010 substituted Charlie Beck for William J. Bratton.

Thereafter, the *Assenza* plaintiffs claimed that defendants were not complying with the judgment.  The *Assenza* court issued an order to show cause re contempt.  Following a hearing, the court on July 29, 1998 issued an order designed to ensure that all police stations have applications for CCW permits and copies of the Concealed Weapon License Policy available for applicants.

B.    *This Action*

On May 18, 2011 plaintiffs filed this action as a petition for writ of mandate alleging that the City was not abiding by the *Assenza* judgment.  Plaintiffs alleged that

4

defendants "have failed to consistently provide to CCW permit applicants both the CCW permit application and/or the LAPD Concealed Weapon Policy." Plaintiffs further alleged that the City had "also failed to inform *all* CCW applicants of the existence of the Advisory Review Panel," which reviews the denial of CCW permit applications, and that the City had "failed to promptly reconsider any application in which the Advisory Panel submits a different decision tha[n] the Defendants[]." Plaintiffs complained that the reconsideration "process takes about one year to complete," which "is an unreasonable amount of time because these [plaintiffs], all of whom the Advisory Review Panel determined satisfy the 'good cause' requirement for the issuance of a CCW, demonstrate the requisite showing of clear and *present* danger which necessitates the need for a CCW to be issued immediately."

Plaintiffs alleged that the City continued to infringe on their "right to obtain and receive a carry concealed weapons license, in addition to the procedure to obtain a response from Defendants[] with respect to CCW applications . . . ." Claiming they had no other plain, speedy, and adequate remedy, plaintiffs sought a writ of mandate pursuant to Code of Civil Procedure section 1085 to compel the City to comply with the *Assenza* judgment. Plaintiffs also sought a writ of prohibition to prevent the City from refusing to comply with the *Assenza* judgment and an order requiring the City to issue CCW permits to plaintiffs.

On May 26, 2011 plaintiffs filed a notice of related cases, asserting that the *Assenza* action was related to this action because the two cases involved the same defendants and the same subject matter. Plaintiffs sought to have their case heard by the judge to whom *Assenza* was assigned. The City opposed the notice of related cases, pointing out that the plaintiffs in *Assenza* had filed a motion to enforce the judgment and for monetary sanctions.[2] The City noted that "[s]ince the *Assenza* and *Davis* cases

_____

[2] The plaintiffs in *Assenza* filed their motion to enforce the judgment on May 4, 2011. On June 9, 2011 the trial court in that action granted the motion in part, and it ordered the defendants to provide the plaintiffs with certain CCW applications and denials and to make the application policy available on the LAPD website. On March 22,

involve some of the same claims and the exact same declarations were filed in support of both matters, it is odd that two separate actions seeking essentially the same relief—a Petition for Writ of Mandate and a Motion to Enforce Judgment—were filed by the exact same attorneys." The City argued that "[n]otwithstanding this duplication of claims in two separate matters, the *Assenza* and *Davis* cases should not be related because they will not require 'substantial duplication of judicial resources if heard by different judges.'" First, the motion by the *Assenza* plaintiffs to enforce the judgment was fully briefed and set for hearing on June 9, 2011. Second, the claim in the *Assenza* case was that the defendants in that case had not provided CCW applications and copies of the LAPD CCW policy to applicants and had altered the CCW permit policy, whereas the issue in this case was whether the named plaintiffs were entitled to CCW permits. The trial court ruled that the cases were not related. Plaintiffs did not seek to intervene in the *Assenza* action.

On June 10, 2011 the City filed its answer to the petition. On August 19, 2011 plaintiffs filed a reply along with supporting documentation.

On April 17, 2012 plaintiffs filed their trial brief, supporting declarations, and exhibits. They argued that a petition for writ of mandate was an appropriate method for enforcing a consent decree like the *Assenza* judgment, that the *Assenza* judgment applied to them because they were intended beneficiaries of the judgment, and that the City was in violation of the *Assenza* judgment. The exhibits included documentation of plaintiffs' unsuccessful attempts to obtain CCW permits from the City. In opposition to the petition, the City argued that mandate was not a proper remedy and, even if it were, plaintiffs were not entitled to relief.

The trial court denied the petition. The court observed that "[t]his case concerns [plaintiffs'] effort to rely on the good cause factors and procedures set forth in the

---

2012 the *Assenza* plaintiffs filed a motion for an order to show cause re contempt. On October 24, 2012 the *Assenza* trial court denied the motion for an order to show cause re contempt but ordered the LAPD to post signs in police stations stating that the application for a CCW license is available on the LAPD's website.

6

Assenza Judgment to obtain mandamus compelling the[] issuance of CCW permits" to them. The plaintiffs "characterize the stipulated Judgment as a consent decree . . . , argue that they are third party beneficiaries of the consent decree . . . ," and claim that the defendants are not following the judgment. The court discussed the nature of consent decrees, while acknowledging that the "City does not necessarily agree that [the judgment] is a consent decree." The court stated that "a consent decree is a hybrid between contract and litigated judgment. While it has the force of the court behind it for contempt purposes, it is a voluntary mechanism. For present purposes, the voluntary feature of the Judgment means that mandamus should not be available. [¶] Mandamus is not an appropriate remedy for enforcing a contractual obligation against an agency. [Citation.] This is because a claim for breach of contract is an adequate remedy at law, and the duty which mandamus enforces is not the contractual duty of the entity, but the official duty of its officer or board. [Citation.]"

The court explained that if "the Chief of Police has breached the Assenza Judgment by failing to apply the factors set forth as generally constituting good cause for a CCW permit, he should be free to do so for purposes of mandamus. The appropriate remedy for his failure to comply is an OSC re: contempt in the Assenza case." The court further explained that "one of the reasons for a consent decree is that a single court will interpret the decree and impose any remedies for its violation as appropriate. . . . The Assenza court has entered the Judgment, retained jurisdiction, held one enforcement hearing, and will hold another in the near future. There is no reason to believe that it will be unable to interpret the Judgment's provisions to resolve the dispute between [plaintiffs] and City over the meaning of good cause."

The trial court also ruled that "the Assenza court is the only entity that may modify the Judgment. It is undisputed that the Assenza Judgment is more restrictive of the Chief of Police's discretion than section 12050(a)(1)(B) requires. . . . According to [plaintiffs], the Chief of Police has had second thoughts about applying the Judgment's good cause circumstances without doing so in conjunction with his 'clear and present danger' policy. [Citation.] Whatever one thinks of the City's interpretation of the

7

Judgment, any attempted modification o[r] clarification must occur through the <u>Assenza</u> court." The trial court added that the *Assenza* judgment states that it can only be enforced by "a motion to enforce or contempt in the <u>Assenza</u> case. Neither the City nor the plaintiffs in <u>Assenza</u> bargained for enforcement of its terms outside of the <u>Assenza</u> case."

The court also stated that, although mandate is available to enforce a ministerial duty to comply with the law, the court was "aware of no case, and [plaintiffs] cite none, where mandamus is available to compel an agency to perform a ministerial duty of complying with a judgment. Assuming that mandamus is available for that purpose, it is not available where the judgment is a consent decree for the reasons stated above."

As to plaintiffs' contention that they were third party beneficiaries of the consent decree, the court noted that "[w]hether they are depends in the first instance on an interpretation of the Judgment by the <u>Assenza</u> court." Plaintiffs "have a remedy through intervention in the <u>Assenza</u> case to seek relief," or by filing an action for declaratory relief. The court stated that mandate was not available to compel the Chief of Police to exercise his discretion to issue a CCW permit under Penal Code former section 12050, nor to remedy the failure to provide CCW permit application and policy at specific police stations, because the plaintiffs already had those documents.

## DISCUSSION

A. *Standard of Review*

Under Code of Civil Procedure section 1085 writs of mandate are "available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) "'a clear, present . . . ministerial duty on the part of the respondent'"; and (3) a correlative "'clear, present, and beneficial right in the petitioner to the performance of that duty.'" [Citations.] A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act.

8

[Citation.]" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339-340; accord, *People v. Davis* (2014) 226 Cal.App.4th 1353, 1371-1372.) We review plaintiffs' entitlement to a writ of mandate de novo. (See *White v. County of Los Angeles* (2014) 225 Cal.App.4th 690, 701 ["[i]n reviewing a trial court's decision on a petition for writ of traditional mandate, we review legal issues de novo on appeal"]; *Karen P. v. Superior Court* (2011) 200 Cal.App.4th 908, 912 ["""[t]o the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo"""].)

B.      *Plaintiffs Cannot Enforce the Assenza Judgment in an Independent Action for Writ of Mandate*

Plaintiffs assert that the *Assenza* judgment is a consent decree that applies not only to the plaintiffs in that action but also to members of the public. Plaintiffs contend that the judgment is an enforceable contract, of which they are third party beneficiaries, and that they have a right to enforce the *Assenza* judgment in an independent petition for writ of mandate. We conclude that even if the *Assenza* judgment is a consent decree rather than a stipulated judgment, and even if the judgment is applicable to the public and enforceable as a contract, plaintiffs cannot enforce it as third party beneficiaries in an independent action for writ of mandate. Rather, the determination whether plaintiffs are third party beneficiaries of the judgment and are entitled to enforce it must occur in the *Assenza* action. Plaintiffs' remedies are intervention in the *Assenza* case or an action for declaratory relief but not a petition for writ of mandate.

1.      Plaintiffs May Not Enforce the *Assenza* Judgment as Third Party Beneficiaries

"'In a . . . consent decree, litigants *voluntarily* terminate a lawsuit by *assenting to specified terms,* which the court agrees to enforce as a judgment.' [Citation.]" (*In re*

9

*Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1600;**3** see *Local No. 93, Intern. Assn. of Firefighters, AFL-CIO C.L.C. v. City of Cleveland* (1986) 478 U.S. 501, 510 [106 S.Ct. 3063, 92 L.Ed.2d 405].)  "'While [consent decrees] are arrived at by negotiation between the parties and often admit no violation of law, they are motivated by threatened or pending litigation and must be approved by the court or administrative agency. . . . Because of this dual character, consent decrees are treated as contracts for some purposes but not for others.' [Citation.]" (*Johnson Products Co. v. F. T. C.* (7th Cir. 1977) 549 F.2d 35, 37, quoting from *U. S. v. ITT Continental Baking Co.* (1975) 420 U.S. 223, 236-237 [95 S.Ct. 926, 43 L.Ed.2d 148]; see *Local No. 93*, *supra*, at p. 519 ["consent decrees bear some of the earmarks of judgments entered after litigation," but "because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts"]; *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 663-664; *In re Tobacco Cases I*, *supra*, 193 Cal.App.4th at p. 1600.)

As noted in *In re Tobacco Cases I*, *supra*, 193 Cal.App.4th 1591, "'whether a consent decree will be treated as a contract will depend upon the particular context in which the issue arises.'" (*Id*. at p. 1600, quoting *Johnson Products Co. v. F.T.C.*, *supra*, 549 F.2d at pp. 37-38.)  Plaintiffs cite *In re Tobacco Cases I* for the principle that "[i]n enforcement actions, consent decrees are treated as contracts for purposes of interpretation." (*In re Tobacco Cases I*, *supra*, at p. 1601; see *Pardee Construction Co. v. City of Camarillo* (1984) 37 Cal.3d 465, 471 [applying principles of contract interpretation to earlier "consent judgment" between the parties].)  The *In re Tobacco*

---

**3**      As did the trial court, we assume without deciding that there is such a thing as a consent decree under California law.  *In re Tobacco Cases I* involved a consent decree entered pursuant to a multi-state master settlement agreement.  (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 44-45.)  Neither the parties nor the court in *Assenza* called the judgment a consent decree but instead referred to it as a judgment "pursuant to stipulation."  (See Code Civ. Proc., § 664.6.)  As we explain, even if the *Assenza* judgment were a consent decree, plaintiffs would not be entitled to the relief they seek.

*Cases I* opinion also states, however, that "courts have rejected the argument that consent decrees are contracts for purposes of . . . 'determining whether a third party beneficiary action could be maintained for breach of that contract.' [Citation.]" (*In re Tobacco Cases I*, *supra*, at p. 1600, fn. 2, quoting *Johnson Products Co.*, *supra*, at p. 38; cf. *United States v. Swift & Co.* (1932) 286 U.S. 106, 115 [52 S.Ct. 460, 76 L.Ed. 999] ["[w]e reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act" for purposes of modification]; *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1206 ["stipulated judgment is not a 'contract'" for purpose of determining whether modification violated Contract Clause].) Thus, contrary to plaintiffs' contention, we do not apply contract principles to determine whether third party beneficiaries of the *Assenza* judgment may maintain an independent action to enforce the judgment.[4]

With respect to consent decrees, "[t]he law is rather clear that a third party, as [a] stranger to the decree and not a party to the government action either directly or by intervention, cannot attempt to enforce it against the defendant. [Citations.]" (*Control Data Corp. v. International Business Machines Corp.* (D.Minn. 1969) 306 F.Supp. 839, 845, aff'd *sub nom. Data Processing Financial & General Corp. v. International Business Machines Corp.* (8th Cir. 1970) 430 F.2d 1277.) Thus, "[o]rdinarily non-parties have no right of action based upon a consent decree." (*Data Processing Financial & General Corp.*, *supra*, at p. 1278; accord, *Johnson Products Co. v. F. T. C.*, *supra*, 549 F.2d at p. 38; see *Rafferty v. NYNEX Corp.* (D.D.C. 1990) 744 F.Supp. 324, 329 ["[e]ven if there were some merit to the decree analysis, plaintiff could . . . not prevail, for it is well established that a private party cannot sue as a third-party beneficiary of a

---

**4**    In discussing the interpretation of consent decrees, plaintiffs assert that "[b]ecause this is a novel issue under California law, the only significant authority on the enforceability of consent decrees by intended third-party beneficiaries is from federal appellate decisions." This is a novel issue under California law because California law contains no provision for consent decrees. Rather, California law provides for stipulated judgments.

11

government consent decree"].)  The United States Supreme Court has held that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."  (*Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723, 750 [95 S.Ct. 1917, 44 L.Ed.2d 539]; see *Aiken v. City of Memphis* (6th Cir. 1994) 37 F.3d 1155, 1168 ["[t]he plain language of *Blue Chip* indicates that even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms"]; *Getty Oil Co. v. Department of Energy* (Temp.Emer.Ct.App. 1988) 865 F.2d 270, 276 [applying Supreme Court's "refusal in *Blue Chip Stamps* . . . to grant enforcement rights to nonparties to a consent decree, 'even though they were intended to be benefited by it'"]; *Jurewitz v. Bank of America, N.A.* (S.D.Cal. 2013) 938 F.Supp.2d 994, 997 ["'[a] well-settled line of authority from [the United States Supreme] Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it'"]; *Ricci v. Okin* (D.Mass. 2011) 770 F.Supp.2d 438, 444 [same]; *Doe v. Briley* (M.D.Tenn. 2007) 511 F.Supp.2d 904, 909 ["[u]nder *Blue Chip Stamps*, the plaintiff must have been a party to the consent decree in order to enforce it"].)  Even intended third party beneficiaries cannot enforce a consent decree "unless the decree specifically" affords them that right.  (*Riha v. State Farm Mut. Auto. Ins. Co.* (S.D.Ind. 2007) 2007 WL 42976 at p. 6; see *International Business Machines Corp. v. Comdisco, Inc.* (N.D.Ill. 1993) 834 F.Supp. 264, 267-268; *Lavapies v. Bowen* (S.D.Ohio 1988) 687 F.Supp. 1193, 1207.)

Some federal courts have created an exception to the *Blue Chip Stamps* rule precluding third parties from enforcing a consent decree, based on Federal Rules of Civil Procedure, rule 71 (28 U.S.C.), for intended beneficiaries.[5]  For example, the Ninth Circuit has held that "the standing rule from *Blue Chip Stamps* prohibits only *incidental*

---

[5]     Rule 71 of the Federal Rules of Civil Procedure (28 U.S.C.) provides:  "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."

third party beneficiaries from suing to enforce a consent decree." (*Hook v. State of Ariz., Dept. of Corrections* (9th Cir. 1992) 972 F.2d 1012, 1015.) As explained in *Hodges by Hodges v. Public Bldg. Com'n of Chicago* (N.D.Ill. 1994) 864 F.Supp. 1493, "[d]espite its seemingly sweeping proscription, *Blue Chip Stamps* has been interpreted narrowly so that certain third party beneficiaries still may sue to enforce a consent decree. Proceeding under the theory that the Supreme Court had not meant to eviscerate Rule 71 [of the Federal Rules of Civil Procedure], courts have created an exception for would-be plaintiffs who are the intended, versus incidental, third party beneficiaries of the decree." (*Id.* at p. 1508.) "[I]f *Blue Chip Stamps* were read broadly to preclude even intended third party beneficiaries from enforcing a consent decree, it would create a direct conflict with [Federal] Rule[s of Civil Procedure, rule] 71. Rule 71 clearly allows intended third party beneficiaries to enforce consent decrees, and *Blue Chip Stamps* should be read to avoid eviscerating Rule 71." (*U.S. v. FMC Corp.* (9th Cir. 2008) 531 F.3d 813, 820, citing *Hook*, *supra*, at p. 1015; see *Beckett v. Air Line Pilots Ass'n* (D.C. Cir. 1993) 995 F.2d 280, 287 ["courts that have allowed non-parties to sue to enforce a consent decree or other court order as intended third party beneficiaries have relied in large part on Rule 71"]; *Berger v. Heckler* (2d Cir. 1985) 771 F.2d 1556, 1565 [*Blue Chip Stamps* "was not intended to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure"].)[6]

---

**6** *Jurewitz v. Bank of America, N.A.*, *supra*, 938 F.Supp.2d 994 noted that since *Hook*, the Ninth Circuit has explained that "parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract *absent a clear intent to the contrary.* This clear intent hurdle is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind. Rather, we examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." (*Id.* at p. 998, quoting *County of Santa Clara v. Astra USA, Inc.* (9th Cir. 2009) 588 F.3d 1237, 1244, rev'd on other grounds *sub nom. Astra USA, Inc. v. Santa Clara County, Cal.* (2011) ___ U.S. ___ [131 S.Ct. 1342, 179 L.Ed.2d 457].) The language of the *Assenza* judgment does not clear this "intent hurdle."

13

There is no California equivalent to Federal Rules of Civil Procedure, rule 71. Plaintiffs have cited to none, nor have they identified any California law allowing unnamed third party beneficiaries of a judgment to bring an action or petition to enforce the judgment. Plaintiffs rely solely on general case law regarding third party beneficiaries' ability to enforce contracts made for their benefit. As noted, however, consent decrees, even where they exist, are not "contracts for purposes of . . . 'determining whether a third party beneficiary action could be maintained for breach of that contract.'" (*In re Tobacco Cases I*, *supra*, 193 Cal.App.4th at p. 1600, fn. 2.) Therefore, even if the *Assenza* judgment were a consent decree, and even if plaintiffs were third party beneficiaries of that judgment, plaintiffs would not be able to enforce the *Assenza* judgment. The general California law governing the rights of third party beneficiaries, direct or incidental, does not give plaintiffs the right to enforce the *Assenza* judgment as third party beneficiaries.[7]

> 2.    Plaintiffs May Not Enforce the *Assenza* Judgment by Writ of Mandate

Plaintiffs contend that they "are seeking a writ of mandate to have [defendants] execute their legal and ministerial duties under the *Assenza* judgment (and, therefore, under Penal Code [former] section 12050) in the precise manner bargained for and agreed to by [defendants] at the time the [*Assenza*] Judgment was entered." Plaintiffs, however, are not entitled to pursue their attempt "to receive the same benefit of the bargained-for consent decree as the original *Assenza* plaintiffs" by mandamus.

---

[7] Plaintiffs argue that the *Assenza* judgment was a consent decree because defendants treated it as a consent decree, and that defendants should be judicially estopped from denying it was a consent decree because they "represented for years after entry of the *Assenza* Judgment—in depositions under oath, in court filings and at oral argument—that the Judgment was a consent decree." Because it does not matter whether the *Assenza* judgment is a consent decree, we do not address these issues.

14

First, and contrary to plaintiffs' assertion, the *Assenza* judgment does not authorize plaintiffs to enforce that judgment by writ of mandate. Plaintiffs argue that defendants' "former counsel *expressly stipulated* in settling the 1998 contempt motion [in *Assenza*] that any further judicial review of [defendants'] CCW license decisions should be sought by a writ of mandate." In plaintiffs' view, this stipulation was a representation by defendants that authorized challenges to the *Assenza* judgment by petitions for writ of mandate. The stipulation in the *Assenza* judgment, however, states: "Any and all judicial review of any decision by the Chief of Police regarding the future issuance or denial of any Permit to Carry Concealed Firearms *as to any Plaintiff in this action* will be brought by way of a separate Writ of Mandate." (Italics added.) The plain meaning of this stipulation is that the *Assenza* plaintiffs can file a petition for writ of mandate in a "separate" independent action if the City denied them CCW permits, not that third parties (third party beneficiary or otherwise) can enforce the *Assenza* judgment by filing such a petition.

Moreover, plaintiffs have adequate remedies at law, either by seeking to intervene in the *Assenza* case or by filing a declaratory relief action to determine their rights under the successor statutes to Penal Code former section 12050. (See *California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 794 ["[t]o warrant relief in the form of a writ of mandate requiring a party to take (or not to take) certain actions in the future, the petitioner must demonstrate there is no adequate legal remedy"]; accord, Code Civ. Proc., § 1086; *People v. Picklesimer*, *supra*, 48 Cal.4th at p. 340.)

With respect to intervention, Code of Civil Procedure section 387, subdivision (a), provides that "[u]pon timely application, any person, who has an interest in the matter in litigation, . . . may intervene in the action or proceeding. . . ." A "trial court has discretion to permit a nonparty to intervene where the following requirements are satisfied: (1) the proper procedures have been followed; (2) *the nonparty has a direct and immediate interest in the action*; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Western Heritage Ins. Co. v. Superior Court* (2011) 199

15

Cal.App.4th 1196, 1205, fn. 12; accord, *Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1521.)  "'To support permissive intervention, it is well settled that the proposed intervener's interest in the litigation must be direct rather than consequential, and it must be an interest that is capable of determination in the action.  [Citations.]  The requirement of a direct and immediate interest means that the interest must be of such a direct and immediate nature that the moving party "'will either gain or lose by the direct legal operation and effect of the judgment.'  [Citation.]"  [Citations.]  "A person has a direct interest justifying intervention in litigation where the judgment in the action *of itself* adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation.  [Citation.]"  [Citation.]'  [Citation.]"  (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 203-204; accord, *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1505.)

The essence of plaintiffs' claims is that they have a direct and immediate interest in the *Assenza* action and the *Assenza* judgment has given them rights.  Plaintiffs allege that their "rights are directly affected by the failure of Defendants[] to abide by the Court Order and Third Amended Judgment of Declaratory Relief issued in" *Assenza*.  Plaintiffs specifically alleged that defendants' "repeated refusals to provide . . . copies of both the CCW permit application and/or the LAPD Concealed Weapon Policy are direct violations of the Third Amended Judgment of Declaratory Relief.  Furthermore, Defendants['] failure to promptly inform applicants of his or her status, failure to respond in a reasonable and timely manner, and direct neglect to promptly reconsider an application upon receiving a different recommendation from the Advisory Panel further demonstrates Defendants['] defiance to comply with the Third Amended Judgment of Declaratory Relief."  Thus, plaintiffs have a basis for seeking intervention.

If the court in *Assenza* allows plaintiffs to intervene in that case they would become parties and would be able to enforce the judgment by a petition for writ of mandate.  (See *Western Heritage Ins. Co. v. Superior Court*, *supra*, 199 Cal.App.4th at p. 1206 [once the trial court grants the application, the "'"intervener becomes an actual party to the suit by virtue of the order authorizing him to intervene"'"]; *People ex rel.*

16

*Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 42 ["[b]y intervening, appellants became parties to the action"].)  As noted, the *Assenza* judgment authorizes plaintiffs in that action to review a denial of an application for a CCW permit by writ of mandate.**8**  If the *Assenza* court does not allow plaintiffs to intervene, then plaintiffs can bring a declaratory relief action, to declare their rights under the successor statutes to Penal Code former section 12050, as the trial court here pointed out.  (See *Peruta v. County of San Diego* (9th Cir. 2014) 742 F.3d 1144, 1148 [action "requesting injunctive and declaratory relief from the enforcement of the County policy's interpretation of 'good cause,'" under the successor statutes to Penal Code former section 12050].)  Either way, plaintiffs have an adequate remedy at law, and mandate is not appropriate.

Finally, the *Assenza* court has jurisdiction to enforce its judgment and is the appropriate court in which to bring an action to interpret and enforce the judgment.  """"The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction."'""  (*Stump's Market, Inc. v. Plaza de Santa Fe Limited, LLC* (2013) 212 Cal.App.4th 882, 890; accord, *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1044.)  Although the *Assenza* court did not specifically state that it was retaining jurisdiction to interpret the judgment, the *Assenza* judgment does state that the "court will retain continued jurisdiction of the action in order to make any further orders which may be necessary," and the court must interpret the judgment to make any such further orders.  (See *In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1520 ["in order to implement" a provision in the judgment the trial

---

**8**    Plaintiffs assert that intervention "is likely futile because [defendants] vehemently opposed [plaintiffs'] attempts simply to relate the *Assenza* and *Davis* actions and the efforts to bring these [plaintiffs] in front of the same court hearing *Assenza* was denied."  Defendants' opposition to plaintiffs' notice of related cases, however, was primarily procedural.  There is no evidence that filing a motion to intervene in the *Assenza* case would be futile or that the *Assenza* court has given any indication, preliminary or otherwise, that it would not consider a motion to intervene.

17

court "first had to interpret the judgment]; *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 936-937 [trial court could interpret the judgment in order to implement the judgment, but could not rewrite it].) The questions whether plaintiffs are third party beneficiaries of the judgment and whether they are entitled to the benefits of that judgment should be decided by the court that entered the judgment. (See *Parkison v. Butte County Sheriff's Dept.* (E.D.Cal. 2013) 2013 WL 1007042 at p. 14 ["[i]f a party attacks a consent decree in a second court, the second court may 'refuse entirely to entertain the action if relief in a more appropriate forum—the rendering court—were available'"].)

Amicus curiae argues that mandate is an appropriate remedy because the issuance of CCW permits "touches on fundamental civil rights," i.e., Second Amendment rights. Amicus curiae, conceding that "a writ of mandate can only be issued to a party who is beneficially interested," also argues that the ""public right/public duty" exception'" recognized in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 applies because plaintiffs "acting on behalf of the public, . . . seek[] a judicial decree compelling a public agency or official to comply with the law." (See *id.* at p. 166; accord, *Hector F. v. El Centro Elementary School Dist.* (2014) 227 Cal.App.4th 331, 339.) Plaintiffs, however, did not raise these issues in their briefs, and we generally do not "consider new arguments raised on appeal by amicus curiae." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275; see *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 572 ["[a]n amicus curiae ordinarily must limit its argument to the issues raised by the parties on appeal, and a reviewing court need not address additional arguments raised by an amicus curiae"]; *Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177, 1187 [same].)

"The Supreme Court has recognized two exceptions: The amicus curiae may raise an issue that will support affirmance and the amicus curiae may assert jurisdictional questions that cannot be waived even if not raised by the parties. [Citation.] Neither of these exceptions applies here." (*American Indian Model Schools v. Oakland Unified School Dist.*, *supra*, 227 Cal.App.4th at p. 275, fn. omitted; accord, *Sacramento County*

18

*Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 473.)  The first exception does not apply because amicus curiae is seeking to reverse the trial court's ruling, not affirm it.  The second exception also does not apply because constitutional issues, such as the Second Amendment issue amicus curiae seeks to raise, are not jurisdictional and may be waived or forfeited.  (Cf. *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 ["""[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"""]; *In re Douglas* (2011) 200 Cal.App.4th 236, 245 [Sixth Amendment claim waived by delay in raising it]; *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048 [due process claim forfeited by failure to raise it below; exception to forfeiture rule applies only to issue of standing].)  Therefore, we decline to address the two new arguments raised by amicus curiae.  (See *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 242, fn. 2 [Supreme Court declines to consider amicus curiae's "constitutional arguments . . . neither raised nor briefed by the parties"].)

## DISPOSITION

The judgment is affirmed.  Defendants are to recover their costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.                              WOODS, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19