Filed 12/10/14  US Source v. Chelliah CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| US SOURCE LLC et al., | |
| Cross-complainants and Appellants, | G049481 |
| v. | (Super. Ct. No. 30-2012-00534737) |
| MAURICE J. CHELLIAH, JR., et al., | O P I N I O N |
| Cross-defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, H. Michael Brenner, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Reza Ghaboosi for Cross-complainants and Appellants.

Andrew D. Weiss for Cross-defendants and Respondents.

\*          \*          \*

# I. INTRODUCTION

ChoiceAdz.com, a search engine optimization firm, filed a complaint against US Source, a marketing firm, for breach of contract. US Source responded with a cross-complaint for breach of contract, and included a cause of action for violation of Penal Code section 502.[1] The focus of section 502 is computer hacking.[2] Section 502 also has an attorney fee provision in subdivision (e) for civil actions filed "pursuant to" that subdivision.[3] The trial judge rejected all claims by each party, but thereafter awarded ChoiceAdz.com its attorney fees on the basis of US Source's unsuccessful section 502 claim. On appeal, US Source now presents a single, pristine issue of law: Is the opportunity for attorney fees under section 502 restricted to plaintiffs *only*? US Source says yes, therefore it was error to award any fees at all to ChoiceAdz.com, who was a defendant on US Source's section 502 claim. But we conclude otherwise. The text is plain; any legislative history to the contrary is unclear. We affirm the order.

# II. FACTS

Our facts are taken largely from the trial court's statement of decision. US Source is operated by Christopher Russell and Anthony Gutierrez (collectively US Source), which is a marketing firm. ChoiceAdz.com is owned and operated by Maurice J. Chelliah, Jr., who also owns Draycott Company. ChoiceAdz.com is in the business of

---

[1] All references to section 502 in this opinion are to the Penal Code.

[2] Technically speaking, the statute obviously encompasses activity beyond classic computer hacking. It is perhaps best encapsulated in the Legislature's declaration of intent, as stated in subdivision (a): "It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data."

[3] Section 502, subdivision (e) provides in pertinent part as follows: "(1) In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. . . . [¶] (2) In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."

providing search engine optimization services.[4]  In early 2011, Chelliah attempted to expand his business by hiring a friend, Brandon Roberts, to search for a company to provide marketing services to ChoiceAdz.com .  Roberts eventually contacted Anthony Gutierrez, with whom he had worked before.  Gutierrez had extensive marketing experience, but little experience with search engines.  Gutierrez referred Roberts to Christopher Russell who owns US Source.

A series of meetings ensued, involving all four parties:  Chelliah, Roberts, Russell, and Gutierrez.  Around June 2011, an agreement was reached under which Chelliah would finance a new marketing team established by Gutierrez and Russell.  The agreement entailed minimum payments of $30,000 a month.

By the end of October, however, Chelliah had become dissatisfied with the sales leads generated by US Source.  As the trial judge would later find, Chelliah made an "arbitrary and unilateral decision" to reduce his payments:  He paid $20,000 the second month, $15,000 the third month, and we have no indication he paid anything thereafter.  ChoiceAdz.com and Draycott (collectively ChoiceAdz.com) filed a complaint for breach of contract a few months later, in January 2012.

US Source, however, had hired sales reps, installed computers, phones, and signed a long-term lease for office space in anticipation of ChoiceAdz.com's business.  And so, in March 2012, US Source filed its own cross-complaint against ChoiceAdz.com, also alleging breach of contract.  Additionally, the cross-complaint contained a claim for violation of section 502.

The cross-complaint's text as regards the section 502 claim was conclusory.  There is no reference *at all* in the cross-complaint as to how, precisely, ChoiceAdz.com

---

4        Search engine optimization is a body of knowledge bearing on an advertiser's likelihood of being placed relatively higher among the "hits" that a viewer will see from a search engine's index of sites fitting the viewer's search terms.

3

had, somehow, stolen computer data from US Source.  At trial, the only allusion to computers *at all* was that ChoiceAdz.com had provided US Source with the email addresses of two individuals *at ChoiceAdz.com* itself (one of which was "chris@choiceadz.com"), and ChoiceAdz.com later closed those email addresses after the relationship was terminated.

In a statement of decision filed in July 2013, Judge Gregory Munoz rejected every claim by every party.[5]  There is no appeal from the merits of that decision. Two months later, ChoiceAdz.com and Draycott made a motion for attorney fees as the "prevailing parties" on US Source's third cause of action for section 502 violation.

The trial court granted the motion.  Judge Munoz's statement of decision directly confronted Judge Moskowitz's decision in *Swearingen v. Haas Automation, Inc.* (S.D. 2010) 2010 U.S. Dist. LEXIS 36963, which had categorically concluded section 502 is limited to "prevailing *plaintiffs* only." (*Id*. at p. 7.)  Specifically, the *Swearingen* decision pointed to a California Senate Judiciary Committee report from 2000 saying language in an earlier draft of the originating bill amending section 502 that had restricted attorney fees to "prevailing plaintiffs" had been dropped, so as not to "chill desired civil enforcement under the proposed new cause of action." (*Id*. at p. 8.)  From the Judiciary Committee report's reference, *Swearingen* concluded that the report revealed the Legislature's intent to "limit the recovery of attorney's fees to prevailing plaintiffs only." (*Ibid.*)

Judge Munoz explicitly disagreed with *Swearingen*.  He wrote, "If the [L]egislature intended to limit attorney's fees to prevailing plaintiffs it could have made its intention unmistakably clear by saying so as it has done with so many other statutes." Rather, he reasoned, the deletion of the words "prevailing party" was simply an

---

5     Judge Munoz was the trial judge, and the one who made the attorney fee order.  However, the formal, signed attorney fee order from which this appeal is taken was signed by Judge H. Michael Brenner, hence his name is in the caption.

4

indication the Legislature thought the words "superfluous." That is, the Legislature was no longer concerned that a party had to actually prevail to be "entitled to fees." "Now," he noted, "even losing parties may be entitled to fees." That meant the decision "to award fees remains within the discretion of the trial court."

## III. DISCUSSION

A. *Background*

US Source reasons this way: The enacted language of section 502 doesn't say it is limited to plaintiffs, but then again it doesn't say it is available to defendants either, ergo it is ambiguous. And, since the language is ambiguous, resort to the legislative history of the statute is appropriate. Further, since the legislative history shows "prevailing party" language was deleted in the process of amending section 502 so as not to "chill" the assertion of section 502 claims, the ambiguity must be construed to preclude defendants from receiving attorney fees. (The connecting thought here is that ChoiceAdz.com was, despite its nominal status as the original plaintiff, substantively a "defendant" because it was US Source who asserted a section 502 claim against ChoiceAdz.com in a cross-complaint.)

US Source buttresses its "no-chill" argument (our phrase, not its) with what might be described as a probability analysis: Prior to 2000, it was highly probable that a section 502 plaintiff would prevail, because, after all, a section 502 defendant would by definition have already been convicted of a crime, which by definition entails a higher standard of proof than an ordinary civil action. However, after 2000 it is *now less likely* a section 502 plaintiff will prevail, because the conviction prerequisite for a section 502 has been dropped. Therefore, says US Source, in order to both (a) encourage section 502 claims but (b) assuage its worry that section 502 plaintiffs might be exposed to attorney fees if they didn't prevail, the Legislature deleted "prevailing party" language from the statute in order to confine fee recoveries solely to plaintiffs.

5

A complete history of section 502 is thus in order. That history goes like this: Prior to 2000, section 502 made computer hacking a *crime*. However, subdivision (e) of the statute also provided that victims of computer hacking could bring a civil action against any person *convicted* under section 502. Such victims could also seek attorney fees if they were a "prevailing party."[6] There was a perceived deficiency in this scheme, however. Civil actions required a prerequisite criminal conviction (i.e., one based on a "beyond a reasonable doubt" standard) and prosecutors' offices often lacked the "technical experience" and resources to prosecute computer crimes.[7] So, in 2000, at least one computer-oriented business (eBay[8]) sought to have the statute amended to make it easier for victims of computer hacking to obtain civil remedies without the need to first obtain a criminal conviction.

Two bills were introduced in 2000 to dispense with the conviction prerequisite of the statute and, in effect, create a free-floating statutory civil cause of action attached to a statute in the Penal Code – Assembly Bills 2232 and 2727. Each proposed to make computer hacking under section 502 a statutory tort with a civil remedy even if prosecutors couldn't obtain a conviction. And each bill contained an attorney fee provision. Assembly Bill 2232's attorney fee provision contained an explicit reference to "prevailing parties."[9] Assembly Bill 2727's attorney fee provision made no such reference.[10] Both bills were passed, and approved by the Governor on September 24,

---

[6] For example, in 1999, the year before the 2000 amending legislation, section 502, subdivision (e)(2) read: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees to a prevailing party."

[7] See Senate Judiciary Committee Bill Analysis for August 8, 2000 hearing date, page 4.

[8] According to the same Senate Judiciary Report which influenced the *Swearingen* court, eBay was the direct "sponsor" of Assembly Bill 2727, about which more in a moment.

[9] It provided that section 502, subdivision (e)(2) would read: "In any action brought pursuant to this subdivision the court *may award reasonable attorney's fees to a prevailing party.*" (Italics added.)

[10] It provided that section 502, subdivision (e)(2) would read: "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."

6

2000, with the final codification reflecting Assembly Bill 2727's deletion of any "prevailing party" language.[11]

A Senate Judiciary Committee report of August 8, 2000, concerning Assembly Bill 2727 gave some indication why the bill was passed without any "prevailing party" language. The report recounted how certain "Recent amendments" that had been made to remove opposition and explained why that bill ended up with no prevailing party language: "Also, existing law allows the award of reasonable attorney's fees to prevailing parties. In response to concerns that this language might chill desired civil enforcement under the proposed new civil cause of action, this provision is proposed for repeal." It was this very passage which the *Swearingen* court said "reveal[ed] it was the legislature's intent to limit the recovery of attorney's fees to prevailing parties only." (*Swearingen, supra*, 2010 U.S. Dist. LEXIS at p. 8.)

One additional item of legislative history from the year 2000, however, needs to be mentioned. The Legislative Counsel's Digest of Assembly Bill 2727 – the version passed without prevailing party language – had this to say on the topic: "This bill would also authorize a court to award punitive or exemplary damages where a violation of these criminal provisions was willful, or where it is proven that the defendant has been guilty of oppression, fraud, or malice as specified, *would allow the award of attorney fees to any party*, and would impose a 3-year statute of limitations." (Italics added.) The *Swearingen* court did not discuss the Legislative Counsel's Digest comment.

---

[11]  Each bill had a provision recognizing the other was proposing amendments to section 502. Section 2 of Assembly Bill 2232 had a provision to the effect that if Assembly Bill 2727 was enacted first, section 1 of Assembly Bill 2232 would not become operative. While both bills were filed with the Secretary of State the same day, we may infer that Assembly Bill 2727 was enacted first, because its version of section 502, subdivision (e)(2) was the one that was codified.

B. *Analysis*

1. *Plain Text*

Classic statutory analysis usually follows a three-step decision-tree: Start with the language of the statute. If plain, apply it, and stop there. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 ["'If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent.'"].) If the language is not plain, look at the legislative history. (See *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239 ["But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history."].) And if the legislative history fails to "reveal clear meaning," there is final step which courts should only take if they have no alternative: apply reason, practicality and common sense. (*Id.* at p. 1239.)

Judge Munoz was right on all three steps. First, the language really isn't ambiguous. Lots of statutes don't say lots of things. Just because this statute doesn't say that the trial court may award fees to a defendant (or, more precisely, a party not making a section 502 claim) doesn't make it ambiguous. On its face the text of the statute is plainly inclusive. All the trial judge needs is an action "pursuant to" the statute. Any perceived need for the statute to specifically say defendants or non-section 502 claimants may be awarded fees depends on the idea that a limitation to plaintiffs must be *implied into* the text of the statute. And that idea doesn't work. (See Code Civ. Proc., § 1858 ["In the construction of a statute, . . . the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted"].) The statute might be a bit broad as written, but that's the way the Legislature wrote it.

But, says US Source, much of the time when the Legislature writes an attorney fee statute, it specifically limits it to prevailing plaintiffs. (E.g., Civ. Code, § 52.4 [in action by person subjected to gender violence, a "prevailing plaintiff" may be

8

awarded fees and costs].)  So the open-endedness of section 502, as written, is anomalous, to say the least.  The answer to this point is that broad statutory language does not make it less plain.  Just on text alone, any party is eligible for fees under section 502.  We deal with the classic problems of overbreadth and absurdity in part III.B.3. below.

2. *Unclear Legislative History*

We could stop there.  (*White, supra,* 21 Cal.4th at p. 572.)  But, because a portion of the legislative history of section 502 may have led at least one federal judge into error, we will observe that the legislative history does not reveal an intent – certainly not a "clear" intent – to restrict attorney fee awards under section 502 only to section 502 claimants.

There are two aspects to US Source's legislative history argument.  One is the conclusion to be drawn from the fact "prevailing party" language was, in fact, deleted from the statute in the process of its enactment.  This fact, however, doesn't help US Source's position – it goes in the opposite direction.  If you have a statute that says:  "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees to a prevailing party" and you delete the final clause so it reads merely:  "In any action brought pursuant to this subdivision the court may award reasonable attorney's fees," the logical implication is that any requirement of prevailing has been dropped – it's a classic case of *expanding* the scope of a statute by deleting previously *restricting* language. (E.g., *Garrett v. Young* (2003) 109 Cal.App.4th 1393, 1404 [noting, among other things, that the Legislature's deletion of previous references to hospitals and reasons for admission to hospitals in medical privacy act meant the legislation was "to apply more broadly to patients of all kinds under the care of any type of health care provider"].)  Indeed, if the actual intent were to restrict fees to plaintiffs, the simplest amendment would have been to just put the word "plaintiff" where the word "party" had been.

9

The second aspect is the "chill" reference in the Senate Judiciary Committee report. This is indeed *some* support for an implied restriction of fees exclusively to section 502 claimants. The logic goes like this: If section 502 claimants have any possibility that making a section 502 claim could backfire on them and result in having fees assessed against them if they didn't prevail, they would be reluctant to bring section 502 claims in all but the most compelling cases. The situation would, in effect, be right back to where it was prior to 2000, when a criminal conviction was prerequisite for a section 502 claim.

But it's only "some" support because a disinclination to chill section 502 claims is not the only reason the Legislature might have had to drop the "prevailing party" language. Another reason would be to unambiguously allow for section 502 claimants to obtain their fees in complex, "mixed" cases where a trial judge might think attorney fees should be awarded to a section 502 claimant, even though, on balance, that section 502 claimant might not qualify as a "prevailing party." (Cf. *In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1599, 1603-1604 [entitlement to contractual attorney fees in "mixed result" case is discretionary matter properly addressed to trial court in the first instance]; *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 ["If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees."].)

However, even assuming the "chill" reference is indeed indicative of a fear that section 502 claims might be retarded by the prospective of being on the painful side of an attorney fee award, it is certainly not a *clear* indication such a fear motivated the Legislature. First, the Senate Judiciary Committee report's "chill" allusion must be balanced against the Legislative Counsel's natural reading of the text of the statute according to what we have determined to be its plain language: Since the text isn't restricted to prevailing parties, "any party" can obtain fees. And as between a committee

10

report and the Legislative Counsel's digest, the latter carries at least as much weight as the former, if not more. (See *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170 ["Although the Legislative Counsel's summaries are not binding . . . , they are entitled to great weight. . . . 'It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest.' [Citation.]"].)

And second, if the Legislature was primarily concerned with making sure no section 502 claimant ever was hit with a fee award, it could easily have included language to that effect. (As it did, for example, in the gender violence statute, Civil Code section 52.4, cited above.) As it is, all we have is the oblique shadow of that idea, not the idea itself.

Bottom line: the legislative history does not clearly say what *Swearingen* concluded it said – that the Legislature intended to restrict fees to section 502 claimants. It is, rather, unclear, and thus not compelling in either direction. In *J. A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1571, this court held that a "clear statement" of legislative intent was required to overcome a previous court decision construing an ambiguous statute – and in the absence of such a clear statement, the judicial construction remained viable. Here, we are not even confronted with an ambiguous statute. As written, it is plain and allows fees to any party.

3. *Reason and Practicality*

The last refuge of a losing litigant in the face of plain language is an absurdity claim – the statute can't mean what it says because what it says is just too awful to have been what the Legislature meant. And sometimes absurdity arguments prevail. (See *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1701.)

But usually they don't. As this court pointed out in *CSEA v OC Comm. College* (2004) 124 Cal.App.4th 574, 588, "True, in rare cases, statutory ambiguity is not a condition precedent to further interpretation, and the literal meaning of the words may

11

be disregarded to avoid absurd results. But this approach is reserved for 'extreme cases' where the absurdity is patent. . . . We must exercise caution using the "absurd result" rule; otherwise, the judiciary risks acting as a '"super-Legislature"' by rewriting statutes to find an unexpressed legislative intent." Along those lines, Justice Kenneth Yegan recently penned a vibrant characterization of the absurdity rule in *People v. Harbison* (2014) ___ Cal.App.4th ___, ___ [2014 Cal.App. LEXIS 947] (dis. opn. of Yegan, J.[12]), the gravamen of which is that the absurdity doctrine depends much on the self-evidency of what is claimed to be so absurd that it overrides the actual text written by the Legislature – the classic "know it when I see it" standard. Here, US Source notes the variety of bad things made criminal under section 502,[13] and posits that the Legislature couldn't possibly have intended to allow a defendant found liable for having done such things to obtain attorney fees.

We agree that the Legislature did not intend defendants found to have engaged in activity proscribed by section 502 to recover fees. But just because one can imagine an absurd result under a discretionary statute does not make the statute say anything other than what it says. The Legislature used the word "may" in section 502. The word "may" traditionally denotes trial court discretion. (E.g., *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 [general rule that "Courts routinely construe the word 'may' as permissive and words like 'shall' or 'must' as mandatory."].) When trial courts have discretion, it is not unfettered, but must be used reasonably in light of the statute conferring that discretion in the first place. (E.g., *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106 "All exercises of discretion must be guided by applicable legal principles, however, which are derived from the

---

[12] Justice Yegan authored *Unzueta*, which upheld an award of some pay to the teacher in that case as against an absurdity argument, but interpreted "full compensation" not to take into account amounts the teacher earned during his suspension was too much even for the majority. Justice Yegan's dissent in *Harbison* is thus an homage to his colleague Justice Gilbert, who found the entire result in *Uzueta* too much to take.

[13] For example, knowingly introducing a computer virus into a computer network. (See § 502, subd. (c)(8).)

statute under which discretion is conferred."].)  Statutes need not be written so as to block abuse of discretion.  The courts can do that without explicit direction.

We have no doubt that in the extreme situation proffered by US Source, it would be a clear abuse of discretion to award attorney fees to a party found to have engaged in activity proscribed by section 502.  But the extreme case is not this case.  This case, in fact, is a good example of why the Legislature may have refrained from explicitly restricting section 502 attorney fees to prevailing parties, i.e., the result here is by no means absurd.  On the record before us, US Source's section 502 claim comes close to having been frivolous, if not having been entirely frivolous.  The claim itself, as stated in the cross-complaint, was supported by no actual facts at all.  The only parts of the record[14] that reveal the merits of that claim involved the revelation that ChoiceAdz.com was merely closing email addresses *it* owned.

The trial judge would thus have been justified in concluding that the section 502 claim had only been included in US Source's cross-complaint for its in terrorem effect.  The Legislature might not have wanted to chill reasonable section 502 claims, but it wasn't willing to insulate frivolous or abusive section 502 claims either.  We find no error.

---

[14]     US Source, as appellant, did not designate the reporter's transcript of the trial as part of the appellate record.  We have only the oral argument on the fee motion.

## IV. DISPOSITION

The attorney fee order is affirmed.  Respondent will receive costs on appeal.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.

14