Filed 11/3/20  Sandford v. Sandford CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAUL F. SANDFORD et al., | |
| Plaintiffs and Appellants, | G057066 |
| v. | (Super. Ct. No. 30-2015-00767156) |
| JOHN C. SANDFORD, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge.  Affirmed.

Gulino Law Office and John J. Gulino for Plaintiffs and Appellants.

Mahaffey Law Group and Douglas L. Mahaffey for Defendant and Respondent.

\*          \*          \*

In this litigation among family members, this appeal follows a judgment in favor of John Sandford (John or defendant) and against Paul Sandford (Paul) and Nancy Sandford (Nancy; Paul and Nancy are collectively referred to as plaintiffs).[1] This matter involves a series of loans made to plaintiffs by John that eventually resulted in a lawsuit initiated by plaintiffs and a cross-complaint by John. The court found entirely in favor of John, concluding, among other things, that "Paul was an untruthful witness." John was designated the prevailing party.

Plaintiffs now argue that the trial court failed to enter a determination on one request for declaratory relief and failed to allow plaintiffs an appropriate offset as to the amount owed. They also argue that they should be designated the prevailing parties. We conclude that none of these arguments have merit, and accordingly, we affirm the judgment.

I

FACTS[2]

We begin by noting that while the introduction to plaintiffs' opening brief includes, for the most part, appropriate record references, the remainder of their brief does not. Their "Statement of the Case" and "Summary of Facts" include only two record references in more than six pages (not counting one record reference simply designated as "A.A."). To make matters worse, some of the record references they do provide are incorrect. For example, the two record references in their statement of facts

---

[1] Because this case involves people with a common surname, we use first names for the ease of the reader and to avoid confusion. Paul and John are brothers, and Nancy is Paul's wife.

[2] John requests judicial notice of several documents from the trial court's file that were not included in plaintiffs' appendix. No opposition was received. Pursuant to Evidence Code sections 452, subdivision (d), and 459, the request is granted.

are both to the appellants' appendix, pages 79-80. Page 79 is a minute order stating "[s]ee attached Statement of Decision" and page 80 is the first page of the statement of decision, and includes only the caption, the nature of the complaint, and a paragraph about the parties' list of controverted issues. It does not include any of the facts the brief refers to.

To the extent the reference to page 80 was intended to include the entire statement of decision, it is insufficient. "'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 28.) This problem persists in their reply brief. Thus, to the extent we are unable to locate any pertinent fact in the record due to plaintiffs' failure to provide proper citations, such facts will not be considered.

We draw the facts of the case primarily from the trial court's statement of decision. This story begins with a $150,000 loan from John to plaintiffs in 2007. This note was secured by a note and deed of trust on a piece of property in Orange (the property). The 2007 loan was repaid in March 2008.

In April 2008, John loaned plaintiffs an additional $100,000. This loan was memorialized in a promissory note dated April 11. The parties agreed this note would be secured by the property and a deed of trust was recorded on May 2. This note was payable on or before December 11, 2008, and provided for interest at 6.5 percent. For reasons that were unclear to the trial court, an identical note executed by plaintiffs provided for an interest rate of 5 percent. At trial, John agreed that 5 percent was the correct interest rate up until September 30, 2008.

In September 2008, Paul requested another loan of $50,000. None of the principal or interest on the April loan had been paid at this point. To summarize what followed, the parties agreed to roll the unpaid April loan into a new loan that totaled $150,000. Paul also owed John an additional $6,850. John told Paul he would accept a new deed of trust and note for $150,000, and agreed to send the additional $50,000, less the $6,850 and accrued interest. The new note, dated September 30, provided for interest at 6.5 percent to run from that date until the date the note was payable, April 1, 2009. John sent plaintiffs a check for $41,260, which represented the new $50,000 loan less accrued interest and the $6,850 Paul owed John. The September 30 note provided for "reasonable attorneys' fees" should a lawsuit be necessary to collect.

Plaintiffs accepted the funds, and the deed of trust for the September 30 loan was subsequently recorded on October 24. The trial court viewed the September 30 loan as novating the prior April loan for $100,000. Plaintiffs assert the deed of trust on the April 11 note was never extinguished.

The October 24 deed of trust, which Paul prepared, included a clerical error – it states it was "made April 11, 2008," despite the notarization of plaintiffs' signatures on October 8. As it was executed to secure the September 30 loan, the deed of trust could not have been "made" in April. This error is reflected again because the deed of trust stated it secured "a promissory note or notes of even date herewith," creating an implication that it secured the April 11 note. This is incorrect because the deed of trust was created to secure the September 30 note for $150,000. The trial court later found the September 30 note and October 24 deed were "clear on their face," and that the note was for $150,000. There is no indication in the record the loan was repaid under its terms.

At some later point, plaintiffs, in further financial difficulties, put the property on the market to settle litigation with their mortgage lender. Plaintiffs were required to sell the property by October 31, 2014; their failure to do so would waive their right to object to foreclosure proceedings. A buyer made an offer and escrow was

4

opened.  John submitted a beneficiary demand to escrow along with the September 30 promissory note for $150,000 and the deed of trust securing the note.  Paul informed escrow he did not believe the amount was accurate.  At one point, escrow was canceled, but it was subsequently reopened.  John did not submit a new beneficiary demand and escrow closed without paying him.  Pursuant to an indemnity agreement with the title insurance company, First American, $270,000 was withheld from the sale proceeds.

In January 2015, plaintiffs filed the instant action against John and First American.  As to John, the complaint include two causes of action for declaratory relief in addition to claims for breach of statutory duty, conversion, fraud, and "bad faith" (apparently intended as a cause of action for breach of contract).  John answered and filed a cross-complaint with eight causes of action, including breach of promissory note.

While the case was pending, the $270,000 in escrow was released to John.  There is no indication in the record that plaintiffs sought to amend their complaint to reflect this.  John states that First American was dismissed from the case, although plaintiffs neglected to include documentation of this fact in the record.

The case proceeded to a bench trial.  After hearing the evidence, the court issued a 14-page statement of decision which separately addressed each cause of action.  The court found entirely in John's favor on each cause of action in the complaint and on all except one claim in his cross-complaint.  In an amended judgment, the court determined John was the prevailing party and awarded him $145,116.38 in attorney fees and costs.  Plaintiffs now appeal.

## II

## DISCUSSION

*Standard of Review*

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) This court is bound by implied findings made by the trial court, such as rejecting a witness's testimony. (*Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1182.)

Our review of any factual disputes is for substantial evidence. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) Pure questions of law are reviewed de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95-96.) "Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

*The Statement of Decision*

Plaintiffs assert that the court refused "to make a determination of entitlement to the funds held by First American," and the statement of decision is therefore inadequate. This is simply incorrect. The statement of decision addressed both of plaintiffs' claims for declaratory relief. In its discussion of the first claim, the court

6

noted that plaintiffs sought "a declaration that they were damaged 'in a sum *not less* than $150,000.' Put differently, plaintiffs seek a declaration that they were damaged in the sum of $150,000 or more. The court finds plaintiffs were **not** damaged in an amount 'not less than $150,000', and so plaintiffs claim for a declarant[ion] that they were damaged in a sum of $150,000 or more, is denied."

In its discussion, the court found the first claim for declaratory relief "was premised upon several facts the Court found to be untrue. The Court rejects the allegation pled in the first cause of action that the statute of limitations ran on the subject promissory note. Contrary to plaintiffs' contentions, the Court finds John funded the $150,000 on the September 30, 2008 promissory note which novated the April 11, 2008 note, and that the September 30, 2008 loan was secured by a deed of trust on the Property . . . . The Court further rejects the contention that John, by incorrectly calculating the interest, violated Civil Code §2943. Plaintiffs failed to prove on a preponderance of the evidence that the April 11, 2008 promissory note was the operative note. They also failed to prove that John violated Civil Code section 2943 when he unintentionally, but incorrectly, calculated the interest referenced in the beneficiary demand. The court finds in favor of defendant John on the first cause of action."

The court also rejected plaintiffs' contention that the September 30 note, which stated on its face that it is for $150,000, was only funded by John in the amount of $50,000. The court found the September 30 note was rolled into the $100,000 loan from April, plus an additional $50,000 at an interest rate of 6.5 percent. The court found that the accrued interest as of the date First American distributed the proceeds to John was $71,562,42, for a total of $221,562.42. The court further found the beneficiary demand John submitted to First American, for $270,000, "unintentionally but erroneously exceeded the amount owing under the Operative Note by an amount of $48,437.58."

Plaintiffs argument that the court failed to determine whether John was entitled to the funds held by First American (which, in fact, were no longer held by First

7

American at the time of trial) is without merit. While the court did not flatly state that plaintiffs were not so entitled, such a finding was implied by the rest of its statements on the matter, and that is sufficient. (*In re Marriage of Cohn*, *supra*, 65 Cal.App.4th at p. 928.)

*The Offset*

It seems what plaintiffs are actually trying to do here is claim a defect in the statement of decision as an end-run around the fact that they never amended their complaint or the answer to their cross-complaint to include a request for the offset they now assert they are entitled to. There is no indication in the record that they requested leave of the trial court to do so.

The court nonetheless addressed this issue in its statement of decision, noting that plaintiffs had failed to plead offset as an affirmative defense to the cross-complaint. The court found the request for an offset was an "equitable one," and rejected "plaintiffs' contention that they are entitled to [an] offset." The court continued that "[t]he equities favor defendant in this analysis. Plaintiffs vehemently denied any liability to repay defendant the $150,000 they borrowed. They proffered false testimony contradicting the plain intent of the parties as reflected in contemporaneously created documents including those surrounding the creation of the Operative Promissory Note . . . ." The court found "[t]he amount by which Defendant's beneficiary demand exceeded the correct sum was far less than the amount plaintiffs owed defendant, yet plaintiffs pursued a sum far greater than $48,000 compelling defendant to file a cross-complaint to protect his rights." Finally, the court concluded that "[p]laintiffs' false testimony alone militates the exercise by this court of its equitable power to grant an offset."

The court also set forth additional facts in its evaluation of the evidence, finding that "Paul was an untruthful witness," and Nancy, in addition to lacking personal

8

knowledge of pertinent facts, "contradicted herself" with respect to some of her testimony. In contrast, the court found "John was a truthful witness" and that when he made an error, "he admitted it." Paul was combative, rude, and insulting, made errors in the documents he prepared, and the documentary evidence did not support his oral testimony. John, on the other hand, with one exception, set forth the history of the case "accurately and in a businesslike manner."

"The right to a setoff is not absolute and may be restricted when [granting a setoff] would be inequitable." (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 358-359.) "It follows that the trial court's decision was one subject to an exercise of its equitable powers, and that the only issue before us on this appeal is whether that discretion was so abused that it resulted in a manifest miscarriage of justice." (*Id.* at p. 359.) "When a court exercises its equity powers, its principal concern is to promote justice, acting through its conscience and good faith." (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 769.) Plaintiffs fall far short of clearing this high bar.

The most important facts are not Paul's combativeness or even his untruthfulness, but that his entire lawsuit was based on the obviously false premise that he and Nancy were somehow entitled to damages "not less than $150,000" and managed to turn what should have been a relatively simple case about the difference between what First American dispersed to John and the calculated amount owed into seven causes of action, alleging, among other things, their entitlement to punitive damages. Plaintiffs' massive overreach required John to defend their largely meritless claim and to bring a cross-complaint to protect his rights. The trial court did not abuse its discretion.

9

*Prevailing Party*

Plaintiffs argue that they should be designated as the prevailing parties because John did not receive affirmative relief on his cross-complaint. The trial court found in John's favor on every cause of action in plaintiffs' complaint, the first cause of action in the cross-complaint, and found almost the entire remainder of the cross-complaint moot or the relief unnecessary. The only claim in this entire lawsuit that the court found in plaintiffs' favor was the fraud cause of action in the cross-complaint.

As a general rule, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).) "'"California courts 'liberally construe "on a contract" to extend to any action "[a]s long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit.'"'"'" (*In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601.)

It is well established that when a defendant files a cross-complaint but neither party obtains any relief, the trial court is required to find the defendant the prevailing party for purposes of costs, but is not *required* to award the defendant attorney fees. (See *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 438-440; *Cussler v. Crusader Entertainment, LLC* (2012) 212 Cal.App.4th 356, 370-372 & fn. 6.)

*Hsu v. Abbara* (1995) 9 Cal.4th 863, with some additional guidance from *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, provides the governing law for determining a prevailing party. In *Hsu,* which concerned a residential real estate transaction, the sellers won a clear victory, but the trial court denied them contractual attorney fees. The California Supreme Court ultimately reversed, determining the sellers were entitled to their fees because they had obtained a "'simple, unqualified win.'" (*Hsu,* at p. 876.) When the case provides a mixed result, the trial court is to examine the case as a whole and compare the extent to which each side won or lost: "Accordingly, we hold that in deciding whether there is a 'party prevailing on the contract,' the trial court is to

10

compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Ibid.*) *Hsu* also held that the trial court, when determining litigation success, "should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" (*Id.* at p. 877.)

Given these considerations, we find no error in the trial court's decision to designate John the prevailing party. Plaintiffs failed in their goal of obtaining any affirmative relief. John's cross-complaint, as evidenced by its mootness once the trial court had ruled on the complaint, was largely defensive in nature. There is no real argument here about which party prevailed, and it was John.

III

DISPOSITION

The judgment is affirmed. John is entitled to his costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


GOETHALS, J.

11