Filed 3/17/22  San Diego County Water Auth. v. Metropolitan Water Dist. of S. Cal. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN DIEGO COUNTY WATER AUTHORITY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA,<br><br>    Defendant and Appellant. | A162168<br><br>(City and County of San Francisco Super. Ct. Nos. CPF10510830 & CPF12512466) |

Metropolitan Water District of Southern California (Metropolitan) appeals from two postjudgment orders awarding San Diego County Water Authority (Water Authority or SDCWA), as the prevailing party, attorney fees and costs under Civil Code section 1717 (§ 1717) and costs under Code of Civil Procedure section 1032 (§ 1032).  We affirm.

**FACTS**

We set forth only those facts necessary to give context to the resolution of the issues raised on this appeal.  The underlying facts are more fully set forth in our prior opinions in *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124

1

(*SDCWA I*) and *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (Sept. 21, 2021, A161144 [nonpub. opn.]) (*SDCWA II*).

## A. Background

Metropolitan, established by statute in 1928, repealed and reenacted in 1969 (Stats. 1969, ch. 209, §§ 1,2, p. 492, West's Ann. Wat.-Appen. (1995 ed.) §§ 109-1 et. seq.[1]), was formed to " 'construct and operate the 242-mile Colorado River Aqueduct' to transport Colorado River water" to cities and communities in Southern California. (*SDCWA I, supra,* 12 Cal.App.5th at p. 1131.) "Today, Metropolitan imports water from two principal sources . . . and delivers the water to a voluntary collective" of 26 member agencies, including the Water Authority. (*Ibid.*) In turn, the Water Authority "delivers the water to retail water agencies serving households and businesses in San Diego County." (*Id.* at p. 1130.)

In 2003, the parties entered into an "Amended and Restated Agreement Between the Metropolitan Water District of Southern California and the San Diego County Water Authority for the Exchange of Water" ("amended exchange agreement" or "exchange agreement"), which provided for an initial price and future prices linked to Metropolitan's rate charged to its member agencies under applicable law and regulation. (*SDCWA I, supra*, 12 Cal.App.5th at pp. 1137-1138.) The price provision reads, in pertinent part:

"5.2 The Price. The Price on the date of Execution of this Agreement shall be Two Hundred Fifty Three Dollars ($253.00). Thereafter, the Price shall be equal to the charge or charges set by Metropolitan's Board of Directors pursuant to applicable law and regulation and generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies . . . . provided, . . ., that (a) after the conclusion of the first five (5) Years, nothing herein shall preclude SDCWA from contesting in an administrative

---

[1] The Water Code Appendix sections appear in the uncodified acts reprinted at 72B West's Annotated Water Code Appendix.

2

or judicial forum whether such charge or charges have been set in accordance with applicable law and regulation; and (b) SDCWA and Metropolitan may agree in writing at any time to exempt any specified matter from the foregoing limitation. In the event that SDCWA contests a matter pursuant to the foregoing sentence, the prevailing Party shall be entitled to recovery of reasonable costs and attorney fees incurred in prosecuting or defending such contest."

## B.   Initial Trial Court Proceeding

In June 2010, the Water Authority filed an action challenging the rates Metropolitan adopted in April 2010 for 2011 to 2012; in June 2012, it filed a second action challenging Metropolitan's 2013-2014 rates. (*SDCWA I, supra,* 12 Cal.App.5th at pp. 1139-1140.) The 2010 operative pleading (third amended petition/complaint) included, in pertinent part, causes of action for a writ of mandate (first), declaratory relief (second), determination of [reverse] validity (Code Civ. Proc., § 860 et seq.) ("invalidity determination") (third) and breach of contract (fourth). Similarly, the 2012 operative pleading (petition/complaint) included causes of action for a writ of mandate (first), declaratory relief (second), invalidity determination (third), and breach of contract (fourth). All causes of action were based on the overarching premise that "Metropolitan's rates are not lawful conveyance rates and, thus, not properly charged under the [amended exchange] agreement." (*SDCWA I, supra*, 12 Cal.App.5th at p. 1140.)

The trial court informally coordinated the 2010 and 2012 cases and bifurcated the bench trial, with phase one addressing the legality of Metropolitan's rate charged to its member agencies and phase two addressing the breach of contract claims. (*SDCWA I, supra,* 12 Cal.App.5th at pp. 1140-1141.) In phase one, the trial court invalidated Metropolitan's rate for both the 2011-2012 and 2013-2014 rate cycles after finding the rate included two cost components (State Water Project costs ("SWP costs") and costs for water

3

conservation programs ("water stewardship rate")), which were improperly imposed under applicable law and regulation. (*Ibid*.) In phase two, the trial court found Metropolitan had breached the amended exchange agreement because the price charged was not " 'consistent with law and regulation.' " (*SDCWA I, supra,* 12 Cal.App.5th at pp. 1140-1141.) "The court awarded the Water Authority 'damages in the amount of $188,295,602 on the breach of contract claims, plus prejudgment interest in the amount of $46,637,180 for a total judgment of $234,932,782." (*SDCWA I, supra*, 12 Cal.App.5th at p. 1141, fns. omitted.) The court entered judgment in favor of the Water Authority and issued a peremptory writ of mandate in accordance with its statement of decision.

After the trial, the Water Authority requested section 1717 attorney fees based on section 5.2 of the amended exchange agreement, contending it was the prevailing party on the contract. Metropolitan did not expressly dispute that the Water Authority had prevailed on the contract, but instead questioned whether it was entitled to fees incurred in both phases of the trial or only in the first phase. The trial court determined the Water Authority was limited to recovering attorney fees incurred for the first phase of trial. (*SDCWA I, supra*, 12 Cal.App.5th at p. 1164.)

C.    **Metropolitan's Appeal and the Water Authority's Cross-Appeal**

On appeal, Metropolitan challenged portions of the judgment and the peremptory writ of mandate. (*SDCWA I, supra,* 12 Cal.App.5th 1124.) We concluded Metropolitan could include its SWP costs in its rate, and therefore, necessarily, could include those costs in the price charged under the amended exchange agreement. (*Id*. at p. 1130.) However, we agreed with the trial court that Metropolitan could not properly include in its rate the cost

4

component of the water stewardship rate and, therefore, the Water Authority was "entitled to recover the overcharges that resulted from inclusion" of the water stewardship rate in the price charged under the amended exchange agreement. (*Ibid*.) We also agreed with the trial court that, "to the extent" the price charged under the amended exchange agreement was based on the improper inclusion of the water stewardship rate, there was a breach of the agreement "providing for future prices 'equal to the charge or charges set by Metropolitan's Board of Directors pursuant to applicable law and regulation and generally applicable to the conveyance of water by Metropolitan on behalf of its member agencies.' " (*Id*. at p. 1154.) Because we did not agree with the trial court's decision in its entirety, we reversed the judgment, vacated the peremptory writ, and remanded the matter for the trial court to recalculate the Water Authority's contractual damages and for further proceedings consistent with the views expressed in our opinion. (*Id*. at p. 1166.)

Both parties also filed appeals from the order awarding the Water Authority section 1717 attorney fees. [2] (*SDCWA I, supra*, 12 Cal.App.5th at pp. 1164-1166.) In setting aside the award, we stated as follows:

"The trial court found the Water Authority to be the prevailing party in the litigation and awarded it attorney fees of almost $9 million pursuant to the contractual fee provision contained in the parties' amended exchange agreement. (Civ. Code, § 1717.) The award represents fees incurred through phase one of trial. The Water Authority asserts the trial court misconstrued the scope of the agreement's attorney fee provision in denying it an additional $2.6 million for prosecuting the second phase of trial.

---

[2] In its appeal from the attorney fee award, Metropolitan argued the award should be set aside if this court reversed the judgment, but it "ma[d]e no claim of error as to the fee award itself." (*SDCWA I, supra*, 12 Cal.App.5th at p. 1141, fn. 10.)

5

"Reversal of the judgment will necessitate a redetermination of the prevailing party on remand, as the Water Authority is no longer the possessor of a 'simple, unqualified win.' [Citation.] On remand, the trial court must determine if one of the parties 'recovered a greater relief in the action on the contract' than the other (Civ. Code, § 1717, subd. (b)(1)) or if the results of the litigation are sufficiently mixed that no party may be said to have prevailed. [Citation.] While the prevailing party determination may change, the scope of the contractual fee provision remains relevant and requires our consideration. [¶] . . . [¶]

"We see no basis for denying fees incurred in the second phase of trial on the breach of contract claim. We agree with the trial court that the fee clause does not broadly cover all contract actions but is narrowly drafted to cover only claims challenging the rates charged by Metropolitan. We disagree, however, that the breach of contract claim here is not such a claim. The contract claim, like the claims tried in phase one, is founded on the assertion that Metropolitan's charges are unlawfully set. Section 5.2 of the . . . exchange agreement [that] requires water transportation rates – the contract's price term – be 'set in accordance with applicable law and regulation,' permits the Water Authority to contest the lawfulness of those rates, and entitles the prevailing party to recover attorney fees incurred in prosecuting 'such contest.' The Water Authority's breach of contract claim is founded on this contractual provision. In the operative complaint, the Water Authority alleges Metropolitan 'breached section 5.2 by setting rates for the conveyance of the Water Authority's purchased water that violate applicable laws and regulations.' The contract price and water rates are one and the same. Proving breach of the price term necessarily includes a rate challenge.

"The lawfulness of the charges imposed under the exchange agreement was not an issue confined to phase one. Metropolitan asserted throughout trial that its contractual charges were set in accordance with applicable law and regulation. In phase two Metropolitan argued there was no breach of contract because the parties understood charges set pursuant to 'applicable law and regulation' include the [SWP] costs and water stewardship rate components, even if the components were invalid as applied to third parties. Both phases of trial thus concerned a dispute over whether charges in the exchange agreement were 'set in accordance with applicable law and regulation.' The prevailing party in that contest, as determined by the trial court on remand, is entitled to an award of contractual attorney fees.

6

"We note, however, that neither the statutory preferential rights claim tried in phase two, nor the unconstitutional condition issue determined on summary judgment, are within the scope of the attorney fee clause. We leave to the trial court the task of appropriate allocation should this become necessary."

(*SDCWA I*, *supra*, 12 Cal.App.5th at pp. 1164-1166.)

## D. Trial Court Proceedings After Remittitur

Following the remittitur, the trial court recalculated the Water Authority's contractual damages, and again entered judgment in favor of the Water Authority and issued a peremptory writ of mandate on August 13, 2020.[3]

The judgment included the following:

"1. Final judgment is ENTERED in favor of [the Water Authority] and against [Metropolitan] on the First Cause of Action in the 2010 and 2012 Actions, for writ of mandate, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement [4] is unlawful. See [(*SDCWA I*)], 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55. A peremptory writ of mandate shall issue, under seal of this Court, commanding Metropolitan to enact only legal wheeling and transportation rates in the future and to exclude the costs of conservation programs and other demand management programs, enacted in these cases as the Water Stewardship Rate, from Metropolitan's wheeling rate published in Section 4405 of Metropolitan's Administrative Code and from the transportation rates charged under the Exchange Agreement. . . .

---

[3] In *SDCWA II*, *supra*, at pages 12 through 21, we rejected Metropolitan's contentions that certain provisions in the judgment and peremptory writ of mandate exceeded the scope of our remittitur in *SDCWA I*.

[4] "The 'Exchange Agreement' refers herein to the October 10, 2003 Amended and Restated Agreement Between the Metropolitan Water District of Southern California and the San Diego County Water Authority for the Exchange of Water. The Exchange Agreement is the source of the Water Authority's breach of contract claims."

7

"2.      Final judgment is ENTERED in favor of the Water Authority and against Metropolitan on the Second Cause of Action in the 2010 and 2012 Cases, for declaratory relief, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful.  See [(*SDCWA I*)], 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55.  In accordance with the Court of Appeal's holding . . ., the Court hereby declares that the inclusion of the Water Stewardship Rate in Metropolitan's wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful and invalid and, further, that Section 4405 of Metropolitan's Administrative Code, entitled 'Wheeling Service,' is unlawful and invalid because it includes the Water Stewardship Rate in the rates charged for wheeling service. [*SDCWA I*] at [pp.] 1130, 1138; *see also id.* at pp. 1138-39, 1150-52, 1154-1155.

"3.      Final Judgment is ENTERED in favor of the Water Authority and against Metropolitan, and all other persons, on the Third Cause of Action in the 2010 and 2012 Actions, for determination of invalidity, because Metropolitan's inclusion of the Water Stewardship Rate in the wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful.  See [(*SDCWA I*)], 12 Cal.App.5th at [pp.] 1130, 1138-39, 1150-52, 1154-55.  In accordance with the Court of Appeal's holding . . ., the Court hereby determines that the inclusion of the Water Stewardship Rate in Metropolitan's wheeling rate and the transportation rates charged under the Exchange Agreement is unlawful and invalid and, further, that Section 4405 of Metropolitan's Administrative Code, entitled 'Wheeling Service,' is unlawful and invalid because it includes the Water Stewardship Rate in the rates charged for wheeling service.  [*SDCWA I*] at [pp.] 1130, 1138; *see also id.* at [pp.] 1138-39, 1150-1152, 1154-55. . . ."

The peremptory writ of mandate provided as follows (bolded language in original):

"Final judgment having been entered on the first cause of action in the 2010 and 2012 Actions, for writ of mandate, **METROPOLITAN is HEREBY COMMANDED** to enact only legal wheeling and transportation rates in the future, and specifically, not to do the things that Division Three of the First Appellate District of the Court of Appeal held were unlawful in its Opinion dated June 21, 2017.  *San Diego Cty. Water Auth. v. Metropolitan Water Dist. of S. Cal.*, 12 Cal. App. 5th 1124, 1166 (2017), *as modified on denial of reh'g*

8

(July 18, 2017), *review denied* (Sep. 27, 2017). The Opinion is incorporated here by reference.

"**METROPOLITAN IS FURTHER HEREBY SPECIFICALLY COMMANDED** to henceforth exclude the costs of conservation programs and other demand management programs, enacted in the above-named cases as the Water Stewardship Rate, from Metropolitan's wheeling rate published in Section 4405 of Metropolitan's Administrative Code and from the transportation rates charged under the October 10, 2003 Exchange Agreement between Metropolitan and the San Diego County Water Authority."

### E.    January 13, 2021 Order

Following entry of the August 13, 2020 judgment, the trial court entertained the parties' cross-motions for attorney fees and costs under section 1717 as the prevailing party.

The trial court initially found neither party entitled to section 1717 fees and costs as a matter of law because neither achieved an unqualified victory. However, and as a matter of discretion, it found that the Water Authority was the prevailing party for the following reasons:

"In this case, [the Water Authority] is the prevailing party. [It] won a substantial $44 million judgment on the contract, and . . . , this case was about much more than money.

"The basis of [the Water Authority's] lawsuit was to recover any charges that [Metropolitan] did not set 'pursuant to applicable law and regulation and generally applicable to the conveyance of water of Metropolitan on behalf of its member agencies.' (See Exchange Agreement, § 5.2) At the outset, the parties agreed that [Metropolitan] was obligated to set its rates based on principles of cost causation, that is, that [Metropolitan] must charge for its services based only on what it costs to provide them. . . . As the Court put it in its Phase I Statement of Decision, 'this [was] the central focus of this case.' . . .

"In Phase I of trial, the [trial court] found [Metropolitan's] inclusion in its transportation rate and wheeling rate of 100% of its State Water Project transportation costs and 100% of its costs for conservation and local water

9

supply development programs recovered through the Water Stewardship Rate, unlawful. . . . On appeal, the appellate court reversed the trial court with respect to the System Access Rate finding that the inclusion of the System Access Rate that recovers the cost of [Metropolitan's] State Water Project transportation payments did not violate the wheeling statutes. . . . On this basis, [Metropolitan] contends that the [trial court] should find that the results are sufficiently mixed that neither party prevailed.

"[Metropolitan's] argument, though somewhat persuasive, does not paint the whole picture 'taking into account the unique facts and circumstances of this case.' . . . In Phase II of trial, which included adjudication of the contract cause of action, [Metropolitan] asserted several positions against [the Water Authority's] breach of contract claim, notwithstanding the trial court's ruling invalidating [Metropolitan's] System Access Rate and Water Stewardship Rate. This suggests that exclusive of whether [Metropolitan's] rates were found invalid, [Metropolitan's] position was that it could prevail on the breach of contract claim nonetheless.

"First, [Metropolitan] claimed there was no basis under the contract to challenge the rate structure because, pursuant to [its] interpretation of the contract, [the Water Authority] never had any right to challenge [Metropolitan's] existing, unamended rate structure. . . . The [trial court] found [Metropolitan's] interpretation inconsistent and 'irreconcilable with the plain language of the contract,' and the testimony of its witness Jeffrey Kightlinger 'contradicted' by other evidence. . . . The [trial court] found that under [section] 5.2 of the Exchange Agreement, [the Water Authority] was within its right to contest whether [Metropolitan's] rates and charges were consistent with applicable law after five years. . . .

"With regard to breach, the trial court reasoned that because [Metropolitan's] charges were not consistent with law and regulation, as determined in Phase I, [Metropolitan] breached § 5.2 of the Exchange Agreement. . . . In response, [Metropolitan] raised several arguments asserting that there could be no breach because [the Water Authority] agreed to [Metropolitan's] existing rate structure by (i) agreeing to an initial price of $253, (ii) entering into the Exchange Agreement knowing [Metropolitan's] existing rate structure, (iii) voting in favor of the challenged rate structure before and after the Exchange Agreement was entered into, and (iv) accepting [Metropolitan's] performance under the contract. . . . The [trial court] found none of [Metropolitan's] arguments precluded [the Water Authority] from

validly challenging whether the charges were properly set pursuant to applicable law and regulation. . . .

"The [trial court] next dealt with the issue of damages. [The Water Authority's] position was that it suffered damages because it paid more than it agreed to under the Exchange Agreement when [Metropolitan] improperly included all of the State Water Project costs for the transportation of purchased water and all of the costs for conservation and local water supply development programs to its conveyance rates. . . . In response, [Metropolitan asserted] that [the Water Authority] did not prove damages because [it] could not prove that it paid more under the Exchange Agreement than it could have under an alternative lawful rate structure. . . . To that, the trial court remarked that [Metropolitan's] argument '[flew] in the face of the positions it [had] repeatedly taken in the past.' . . . Throughout the litigation, [Metropolitan] asserted both that (i) only a new rate setting procedure may be used in the case to fix lawful rates which in turn must be done before damages can be ascertained, and (ii) the superior court lacked jurisdiction to do this. . . . The trial court noted that '[t]he effect of [Metropolitan's] fabricated conundrum would be, of course, that damages could never be fixed if [Metropolitan] ever breached the Exchange Agreement.' [5] . . . The [trial court] ultimately found that [the Water Authority] had proven that it was in fact damaged by paying conveyance rates that were higher than [Metropolitan] could have set pursuant to [the applicable] law and regulation, and that [the Water Authority] was 'not required to prove the fact of damages by providing the entire universe of possible alternative legal rate structures [Metropolitan] might have implemented.' . . . This ruling was not [disturbed] on appeal.

"[Metropolitan's] argument that it obtained the 'greater relief' simply because it prevailed on one of the two contract claims is not persuasive when the [trial court] evaluates each side's stated litigation positions and evaluates

_____

[5] "[Metropolitan] also argued that [the Water Authority] failed to account for (or off set) benefits it secured by [Metropolitan's] illegal rates, and as a consequence failed to establish damages. . . . However, [Metropolitan] bore the burden of demonstrating that [the Water Authority's] damages were offset by incidental extra-contractual benefits [it] obtained as a result of the same conduct amounting to breach. . . . The [trial court] found that '[n]o evidence showed [the Water Authority] would have received a consequential benefit. . . . Accordingly, [Metropolitan's] argument for an offset does not defeat liability. It has not met that burden. . . .' "

11

their 'relative success' on those objections, 'taking into account the unique facts and circumstances of each case.' . . . While it is true there was no breach of contract with respect to [Metropolitan's] System Access Rate, there was a breach of the agreement with respect to the Water Stewardship Rate that was unlawfully charged for the conveyance of water. Moreover, [the Water Authority] defeated [Metropolitan's] position that it could not challenge the rates under the Exchange Agreement and demonstrated that it was entitled to recover damages attributable to the unlawful inclusion of the Water Stewardship Rate over [Metropolitan's] objections. . . . Here, [the Water Authority] obtained the greater relief for prevailing in its fundamental goal of enforcing, based on the contract, the laws governing the conveyance of water: a vital and dispositive victory in addition to [the Water Authority's] significant monetary recovery. . . .

"Second, although [Metropolitan] may have prevailed on its position that the [SWP] costs could lawfully be included in the transportation rate, it failed to succeed on the majority of its stated litigation positions on the contract cause of action. Based on the record, [Metropolitan] sought to evade the contract entirely, 'denying an enforceable contract and actionable breach.' . . . [Metropolitan's] assertions about the Exchange Agreement and its defenses in the action on that contract – including [Metropolitan's] contentions that [the Water Authority] consented to [Metropolitan's] unlawful rates, that the Exchange Agreement itself was 'illegal at its inception,' and that [the Water Authority's] claims were time-barred – were rejected at the trial court level and on appeal. . . . [Metropolitan] made 'several assertions . . . denying an enforceable contract and actionable breach but none [was] persuasive. The contract was not illegal at its inception for including a variable price term that was ultimately found to contain an unlawful rate component.' . . . [The Water Authority] obtained rulings, affirmed on appeal, that Metropolitan breached the Exchange Agreement by violating the Wheeling Statutes and the common law, 'violated the contractual term price, not just the wheeling rate, and [that] actionable injury [was] shown by payment of a water stewardship rate unrelated to the transportation services provided.' . . . [The Water Authority] not only obtained a $44 million damage award, but also successfully defended the Exchange Agreement and obtained a writ of mandate and declaratory relief. . . . [T]he appellate court narrowed the universe of costs [the Water Authority] could potentially challenge, 'but on the other hand cemented [its] authority to . . . enforce [the contract],' which was also a disputed issue in this litigation. . . . [T]he 'fractional damages award does not negate the broader, practical effect of the court's ruling.' . . .[¶] . . . [¶]

12

"In sum, [the Water Authority] did not need a complete victory as a prerequisite for awarding . . . fees. . . .  Metropolitan's argument that [the Water Authority] did not obtain the greater relief because of the post-appeal reduction on damages fails to account for [the Water Authority's] important nonmonetary victories on the contract.  More than a claim for just damages, [the Water Authority's] litigation objective was to require Metropolitan to comply with 'legal limits on charges imposed by government agencies,' including the core principle that rates must be 'limited to the costs of providing the services at issue.' . . .  [The Water Authority] prevailed, and the judgment not only benefits its own ratepayers but all of the nearly 19 million people in Metropolitan's service area because enforcing cost-of-service principles serves the interests of all ratepayers. . . .  [The Water Authority] also vindicated 'the policy of the state to facilitate the voluntary sale, lease, or exchange of water or water rights in order to promote efficient use.' . . . Specifically, [the Water Authority] proved that Metropolitan violated the Wheeling Statutes, the common law, and the Exchange Agreement by overcharging for an exchange of water that not only benefits the [Water Authority] ratepayers but all of Metropolitan's service area."

The court concluded, "[f]or foregoing reasons, the Court finds that [the Water Authority] obtained the greater relief by 'examining the results of the action in relative terms' [citation], and evaluating each side's stated litigation objectives and their 'relative success' on those objectives, 'taking into account the unique facts and circumstances of [the] case.'  [Citation.]  Accordingly, [the Water Authority] is the prevailing party on the contract and entitled to the fees and cost[s]."

### F.     February 10, 2021 Order

The parties filed cross-motions to strike or tax costs in each other's memorandum of costs and made competing claims that each was the prevailing party under section 1032.  The trial court granted the Water Authority's motion to strike and denied Metropolitan's motion to strike.  The court found the Water Authority was the prevailing party, concluding that even if the Water Authority is not the party with a " 'net monetary recovery,' " entitled to recover costs as a matter of right (§1032, subds. (a)(4), (b)), nonetheless, it was entitled to recover costs as a matter of the court's

13

discretion. "Under either scenario, [the Water Authority] is entitled to [its] costs." The court also found the items in the Water Authority's memorandum of costs appeared to be proper charges necessarily incurred in the litigation, and, as Metropolitan did not oppose any of the costs, the Water Authority was awarded costs of $326,918.34.

Metropolitan timely appealed from both the January 13, 2021 and February 10, 2021 orders. (See *R.P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 158 ["[a] postjudgment order awarding attorney fees is separately appealable" under Code Civ. Proc., § 904.1, subd. (a)(2)]; *Jimenez v. City of Oxnard* (1982) 134 Cal.App.3d 856, 858 fn. 3 ["[a]n order denying a motion to tax costs is appealable when it is made after final judgment"].)

## DISCUSSION

### I.     Prevailing Party Determination Under Section 1717

Metropolitan argues the trial court committed prejudicial legal error in its prevailing party determination under section 1717. It does not question that section 5.2 of the amended exchange agreement allows a prevailing party to recover attorney fees and costs incurred in both phases of the trial because each pertained to the Water Authority's claim for breach of the amended exchange agreement. It argues only that section 1717 required the court to make its prevailing party determination based solely on a consideration of " 'the results of the litigated contract claims,' " as alleged in the fourth causes of action in the operative pleadings, and without consideration of the results "achieved on the noncontract claims," i.e., claims for "declaratory relief, a writ of mandate, and an order invalidating the challenged rates," as alleged in the first, second, and third causes of action in the operative pleadings. We see no merit to this argument.

14

Section 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the contract, shall be awarded . . . to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." (*Id.*, subd. (a).)  In making its prevailing party determination, the trial court is tasked with evaluating which party "recovered a greater relief in the action on the contract," and the court may also determine that there is no prevailing party on the contract.  (*Id.*, subd. (b).)

"In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action."  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*); see generally *Luckey v. Superior Court* (1930) 209 Cal. 360, 366 ["[t]he subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief"].)  Hence, it has been held, "[a]n action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241-242.)

"[C]ourts have found claims to be 'on the contract' in a variety of circumstances extending beyond a direct breach of contract claim."  (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1170, citing to *In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601 [action for

15

declaratory and injunctive relief to enforce consent decree was " 'on the contract' " for the purpose of Civil Code section 1717], *Kachlon, supra,* 168 Cal.App.4th at pp. 347-348 [equitable action seeking declaratory and injunctive relief and quiet title based on violations of the terms of a promissory note and deed of trust was " 'on the contract' " within the meaning of Civil Code section 1717], *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 480 [unlawful detainer action based on a lessee's breach of covenants in a lease "was one sounding in contract" for the purpose of Civil Code section 1717]; see *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246 ["[a]ctions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of Civil Code section 1717"].)

We therefore reject Metropolitan's position that the trial court's section 1717 prevailing party determination rests on "legally impermissible grounds, namely, consideration of Water Authority's noncontract claims," as there are no noncontract claims in this action. Each cause of action in the operative pleadings is premised on the same overarching factual allegation – that the price charged under the amended exchange agreement was invalid because the basis for the price, Metropolitan's rate, was not set pursuant to applicable law and regulation. We confirmed this when we stated in our prior decision that "[b]oth phases of trial . . . concerned a dispute over whether charges in the exchange agreement were 'set in accordance with applicable law and regulation,' " with the prevailing party "in that contest" entitled to an award under section 1717. (*SDCWA I, supra,* 12 Cal.App.5th at pp. 1165-1166.)

We also are not persuaded by the argument that the trial court erred in its prevailing party determination because it considered "whether one party recovered greater relief in [the] Water Authority's action for declaratory

16

relief, its petition for writ of mandate, or its reverse validation action in the rate challenge claims." The requests for writ and declaratory relief and invalidity determination, albeit set out as "causes of action," did not " 'create' " causes of action that " 'otherwise [did] not exist' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80), but were "wholly derivative" of the Water Authority's contract claim. (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794; see *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173 ["injunctive and declaratory relief are equitable remedies, not causes of action"]; *Eilken v. Morrison* (1969) 3 Cal.App.3d 25, 29 [mandamus is "extraordinary remedy" appropriate when "other remedies are inadequate"].)

In sum, we find unavailing Metropolitan's contention that the operative pleadings "included *other* causes of action challenging the lawfulness of, and seeking to invalidate, certain rates that apply generally to services [it] provides to all of its member agencies, unrelated to the [amended exchange] [a]greement" (italics added), which should have been eliminated from the court's prevailing party determination under section 1717. All of the causes of action, regardless of label, were related to the amended exchange agreement, and therefore were "on the contract" for the purpose of determining the prevailing party entitled to an award of attorney fees and costs under section 1717.

There is also no merit to Metropolitan's additional contention that the first, second, and third causes of action (to the extent they challenge its rate) are "unrelated" to the amended exchange agreement because without those causes of action the Water Authority would have obtained only monetary relief on its breach of contract cause of action and "no laws governing conveyance of water would have been " 'enforced.' " The judgment's provisions, entered on the first, second, and third causes of action, were not

17

limited solely to the enforcement of Metropolitan's rate. Instead, in granting relief on those causes of action, the judgment, in pertinent part, specifically (1) declares that "Metropolitan's inclusion of the Water Stewardship Rate in . . . the transportation rates charged *under the Exchange Agreement* is unlawful;" (2) directs that "[a] peremptory writ of mandate shall issue . . . commanding Metropolitan to . . . exclude the costs of conservation programs and other demand management programs, enacted in these cases as the Water Stewardship Rate . . . from the transportation rates charged *under the Exchange Agreement*," with the peremptory writ of mandate specifically commanding Metropolitan to "henceforth exclude the costs of conservation programs . . ., enacted in the above-named cases as the Water Stewardship Rate, . . . from the transportation rates charged *under the October 10, 2003 Exchange Agreement between Metropolitan and San Diego County Water Authority*;" and (3) determines that "the inclusion of the Water Stewardship Rate in . . . the transportation rates *charged under the Exchange [A]greement* is unlawful and invalid. . . ." (Italics added.) Accordingly, even if the operative pleadings contained a single cause of action for breach of contract, the Water Authority would have obtained the nonmonetary relief as described above, and the "enforcement of laws" would have figured in the court's prevailing party determination under section 1717.

Metropolitan's argument is not supported by the case law cited in its opening brief. In *Douglas E. Barnhart, Inc v. CMC Fabricators, Inc.*, *supra*, 211 Cal.App.4th at pages 242 through 243, the appellate court held that section 1717 attorney fees could not be awarded to a party for litigating a "promissory estoppel" cause of action because such a claim was not "based on contract." Similarly, in *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333 at page 353, the appellate court held that a court making a

18

prevailing party determination under section 1717 could not properly consider the "noncontract" claim of "unjust enrichment." And, in *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515 at page 531, the appellate court held that an award of section 1717 attorney fees to a party who prevailed on a petition to compel arbitration in a pending lawsuit was appropriate only when the petition terminated the entire " 'action on the contract.' " The mere recitation of the decisions in the cited cases demonstrates they are factual inapposite to this action and do not warrant a different outcome.

For the reasons stated, Metropolitan's challenge to the trial court's prevailing party determination under section 1717 fails. Section 5.2 of the amended exchange agreement provided for the recovery of attorney fees and costs in a lawsuit to challenge whether Metropolitan's rate violated applicable law and regulation. The entire lawsuit constituted an action "on the contract" for the purpose of the prevailing party determination under section 1717. Consequently, in assessing which party had recovered "a greater relief in the action on the contract" (§ 1717, subd. (b)(1)), the trial court was entitled to consider the Water Authority's success, in whole or in part, on the first, second, and third, causes of action for writ, declaratory, and invalidity determination, and was not limited to an evaluation based solely on which party recovered a greater relief on the fourth cause of action for breach of contract.

## II. Prevailing Party Determination Under Section 1032

Metropolitan also challenges the award of costs under section 1032, arguing the trial court erred in its prevailing party determination under that statute. The Water Authority responds, in pertinent part, that if this court upholds the prevailing party determination under section 1717, we need not

19

address Metropolitan's section 1032 argument as any purported error would be harmless. Metropolitan counters that review of its challenge to the prevailing party determination under section 1032 is required because "cost awards are governed" by section 1032. We agree with the Water Authority.

By its plain language, section 1032 does not control the award of costs if the action is controlled by another statue. Section 1032, subdivision (b) specifically provides that, "*[e]xcept as otherwise expressly provided by statute*, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Italics added.) In this case, Section 1717 is a statute that expressly provides "otherwise," as it concerns a prevailing party's right to recover attorney's fees *and costs* under a contract, and "to apply section 1032 in such cases would obviate section 1717." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1157; see *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147 ["[s]ection 1032's definition of 'prevailing party' does not control . . . when another statute provides for different means of allocating costs"]; *Sears*, *supra*, at p. 1158 ["where section 1032 is inapplicable or where these criteria are found ill-suited, the court should begin its inquiry in any contract action with the provisions of section 1717 and be guided in the proper exercise of its discretion by the equitable principles fundamental to that section"]; see also *Rose v. State of California* (1942) 19 Cal.2d 713, 723-724 ["[i]t is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates"].)

In sum, our decision to affirm the court's prevailing party determination under section 1717 in favor of the Water Authority renders it unnecessary for us to address the court's prevailing party determination under section 1032. (See *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1116, fn. 5 ["[b]ecause we conclude that defendant was entitled to its postoffer attorney fees and other costs under [Code of Civil Procedure] section 998, it is unnecessary to address the trial court's alternative theory defendant was entitled to those fees and costs under [Civil Code] section 1717 as well because it was the 'prevailing party' on the issue of entitlement to postoffer costs, even though it was not the prevailing party with respect to the lawsuit as a whole"]; *Canyon View Ltd. v. Lakeview Loan Servicing, LLC* (2019) 42 Cal.App.5th 1096, 1099, 1101 [appellate court found it did not need to address the trial court's refusal to award section 1032 costs given that the appellant was entitled to reasonable costs under the Mobilehome Residency Law].) The cases cited by Metropolitan do not warrant a different outcome as they are factually inapposite.

## DISPOSITION

The orders filed on January 13, 2021 and February 10, 2021 are affirmed. Plaintiff and respondent San Diego County Water Authority is awarded costs on appeal.

21

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.


A162168/*San Diego County Water Authority v. Metropolitan Water District*

22